PEOPLE v TIMS

PEOPLE v KNEIP

Docket Nos. 98192, 99174. Argued November 3, 1994 (Calendar Nos. 11-12). Decided July 5, 1995. Rehearing denied in *Tims,* 450 Mich 1204.

Elmore Tims, Jr., was convicted by a jury in the Genesee Circuit Court, Philip C. Elliott, J., of involuntary manslaughter as a result of striking the victim with his automobile. The jury was instructed that the defendant's conduct must be *a,* rather than *the,* substantial cause of the victim's death. The Court of Appeals, MARILYN KELLY, J. (WEAVER, J., and FITZGERALD, P.J., concurring), reversed and remanded the case, stating that under *People v Layman,* 299 Mich 141 (1941), *People v Townsend,* 214 Mich 267 (1921), and *People v Barnes,* 182 Mich 179 (1914), the defendant's conduct must be *the* proximate cause of the victim's death (Docket No. 133334).

Roger D. Kneip was convicted following a bench trial in the Detroit Recorder's Court, Michael F. Sapala, J., of involuntary manslaughter as a result of striking the victim with his automobile, after finding that the defendant's conduct was *a* substantial cause of the victim's death. The Court of Appeals, CORRIGAN, P.J., and J. H. GILLIS, SR., and C. H. STARK, JJ., reversed in an unpublished opinion per curiam on the basis of *People v Tims,* 202 Mich App 335 (1993) (Docket No. 144608).

In both cases, the people appeal whether it is sufficient that criminal negligence be *a* proximate cause of a victim's death.

In *People v Tims,* the decision of the Court of Appeals was affirmed by equal division.

In *People v Kneip,* in an opinion by Justice MALLETT, joined by Justices BOYLE, RILEY, and WEAVER, the Supreme Court *held:*

In order to convict a defendant of a criminal negligence offense, the prosecutor must prove beyond a reasonable doubt that the defendant's conduct was a factual cause of the fatal accident. Although a cause-in-fact relationship is often sufficient, cases arise in which the death is so remote from the defendant's conduct that it would be unjust to permit conviction. In such a case, a question for the jury is whether the

defendant's conduct was a proximate or legal cause of the decedent's death.

1. The phrase "proximate cause" reflects the reality that almost invariably there is only one culpable act that could be considered a direct cause, but it does not imply that a defendant is responsible for harm only when the defendant's act is the sole antecedent. That an additional cause of death could be a complete defense to negligent homicide is inconsistent with accepted notions of responsibility. Joint equal causes do not excuse culpable behavior.

2. Although a victim's contributory negligence is a factor to consider in determining whether the defendant's negligence caused the victim's death, it is not a defense, nor is the contributory negligence of a third party. There is no reason why a defendant whose negligent conduct causes a death should be excused because another person was also negligent. The negligence of the victim is grounds for acquittal only when it is shown that the defendant was not negligent or did not cause the decedent's death. The defendant's conduct must be a cause of the harm sine qua non, and the harm must be a foreseeable risk of the defendant's conduct.

3. The rules of causation in criminal cases are not tied to the rules of causation in civil cases. The negligence of a victim is not a bar to criminal liability.

Reversed.

Justice CAVANAGH, joined by Chief Justice BRICKLEY, and Justice LEVIN, dissenting, stated that criminal liability requires a more direct causal connection than merely finding that the defendant's actions were *a* cause. Where there are multiple independent causes contributing to the victim's injury or death, so that the defendant's conduct alone would not have caused the death, liability for criminal negligence should not be imposed unless the defendant's conduct sufficiently dominated the other contributing factors, to be fairly deemed a criminal proximate cause, and the injury was reasonably foreseeable from the defendant's negligence. Even though a victim's contributory negligence is not an affirmative defense, it is a factor to be considered by the trier of fact in determining whether the prima facie element of proximate cause has been proven beyond a reasonable doubt.

Finding that the defendant's conduct was a substantial factor, or a but-for cause of the victim's injury is not the end of the inquiry. It is insufficient to focus on *the sole* proximate cause. As in tort, criminal law requires a second level of inquiry into proximate causation, i.e., whether the defendant's

conduct, as a substantial factor in bringing about a reasonably foreseeable or natural and probable resulting injury, sufficiently dominated the other causal factors, to be fairly deemed a criminal proximate cause. A mere finding that the defendant's conduct was a substantial factor, as required by tort law, is insufficient in the criminal context. In criminal negligence cases, when the defendant's conduct alone could not have independently resulted in the harm, the trier of fact must determine, beyond a reasonable doubt, that the defendant's conduct sufficiently dominated other contributing factors to be fairly deemed a criminal proximate cause.

In *Tims,* the prosecutor failed to recognize that tort causation principles should not determine criminal causation. The actions of independently acting individuals combined to result in the victim's death, and the cause-in-fact question is whether the defendant's conduct was a substantial factor. While the trial judge instructed the jury that the defendant's negligence was required to be a substantial cause of the victim's fatal injuries, he failed to instruct the jury adequately about proximate cause. This was error requiring reversal because it was not harmless beyond a reasonable doubt.

In *Kneip,* the actions of three independent persons combined to result in the victim's death. Applying the substantial-factor test, the collision between the defendant's car and the victim set in motion a chain of events that made the intervening collision reasonably foreseeable. Thus, the negligence of the second driver was not a superseding cause, cutting off the defendant's liability. Although the trial court erroneously used a tort law analysis, the error was harmless beyond a reasonable doubt because it essentially determined that the defendant's gross negligence sufficiently dominated the victim's negligence to be fairly treated as a criminal proximate cause of the victim's death.

Justice WEAVER took no part in the decision of *People v Tims.*

202 Mich App 335; 508 NW2d 175 (1993) affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Arthur A. Busch,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Research, Training and Appeals, for the people in *Tims.*

*Frank J. Kelley,* Attorney General, *Thomas L.*

*Casey,* · Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Research, Training and Appeals, for the people in *Kneip.*

*O'Rourke & Joseph, P.C.* (by *Jerome F. O'Rourke*); *Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.,* of counsel (by *Robert D. Goldstein*), for defendant Tims.

*Richard M. Lustig* for defendant Kneip.

Amici Curiae:

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Research, Training and Appeals, for the Genesee County Prosecutor's Office.

*P. E. Bennett* for the Criminal Defense Attorneys of Michigan.

MALLETT, J. The defendants in these consolidated cases were convicted of negligent homicide and involuntary manslaughter, respectively, both arising out of the use of automobiles. In separate decisions, the Court of Appeals reversed their convictions, holding that a defendant may be convicted of these offenses only if his culpable conduct is found to be "the" proximate cause of death. We would reverse the decision of the Court of Appeals in *Kneip,* and would reverse in *Tims.*

I

FACTS AND PROCEDURAL HISTORY

A

*PEOPLE v TIMS*

This case arises out of a fatal accident that took

place at approximately 8:30 P.M. on Sunday, July 9, 1989. It was a clear day. Shortly before the accident, the defendant and Bobby Osborne engaged in a drag race on Jennings Road in Genesee County. The defendant was driving a blue Pontiac Trans Am. Osborne was driving a Chevrolet Z-28 Camaro.

Even after the drag race ended and Mr. Osborne had stopped at the side of the road, the defendant continued to drive extremely fast. The most complete description of the accident comes from witness Daniel Frederick, who was traveling southbound—the same direction as the defendant—in the far right lane. Earlier, he had passed between the defendant's car and Mr. Osborne's car as they were preparing for their race. He essentially stated that the victim, who checked for traffic before entering the road, jogged across the southbound lanes a safe distance in front of his car, which was traveling the legal speed limit. When the victim reached the northbound lanes, he was struck by the defendant's southbound car, which had been traveling at about twice the speed limit and had swerved into the northbound lanes in an attempt to avoid him:

> *A.* I noted that the blue car was closing the gap between our cars, you know, rapidly, and I, ah, noted that he also, as I traveled down I noted that he cut over one lane. In other words, he went into the—still in the southbound lanes, but heading— he was in the west whereas he was in the east lane comin' up from behind.
>
> *Q.* So he is in the center?
>
> *   *   *
>
> *A.* Yes, that's correct. And I continued down to the baseball players—the two guys playing base-

ball. I didn't see the ball go. I assume they were hit—earlier I had seen them hit a ball, so I assumed that they were . . .

*Q.* Well, don't—don't assume. Just tell what you saw?

*A.* I saw a guy—there was probably, oh, a car-and-a-half, two cars ahead of me and I saw the guys that was playin' ball in front of my car. He had an adequate amount of time. I didn't even have to slow up.

*Q.* How many car lengths is this now?

*A.* I would estimate probably about two car lengths.

*Q.* How long are you calling a car length?

*A.* All right, let's say car lengths would be—let's say—well, actually it would be more than that. I would say probably 30 feet anyways.

*Q.* So he runs into your lane?

\* \* \*

*A.* I think that would be a better explanation. A jog—kind of a slowish jog into the street. Like I said, he had plenty of time to get in front of my car. I noted that he looked at me and seen he had time and ran . . .

*Q.* Okay, you saw him look at you. You looked to the left?

*A.* Yeah, he looked in my direction and saw my car.

*Q.* Was that before he entered the street?

*A.* Yes, it was.

*Q.* Now he enters Jennings Road and he goes where?

*A.* Continues on across the street. Now he goes into the next lane, which would be the—still in the southbound lanes, and he went into the—which would be the westbound lane—excuse me, the western lane, and . . .

\* \* \*

*Q.* You would have been in lane number 1.

*A.* I would have been in lane number 1. Okay. The baseball player cut in front of my car, going from 1 towards 2. All right . . .

*Q.* What did you see happen when he was in lane 2?

*A.* I glanced in my rear view mirror and the blue car was rapidly closing the gap. He was in the same lane as the young man runnin'—or joggin'. At that time the blue car veered to the left to avoid him. He went over into what would be the northbound lanes, probably one-and-one-half lanes, so he was probably—his car—he had probably—from the driver's wheel I would say he had like maybe two feet before he would have hit the curb.

*Q.* But where was the person?

* * *

*A.* Okay, in the second lane he glanced over this way to the left, but he was still running. He ran—continued to run, saw the blue car, and did like—the best way I can describe it it would be a momentary pause or stop.

* * *

He would be in—by now he was in—probably what would be lane 3. In other words, he would have been in the northbound lanes.

*Q.* He would have crossed the center line?

*A.* Yes.

*Q.* After he did that little pause what did he do?

*A.* After he did the pause he looked and then he just took a step?

*Q.* And then what happened?

The right front fender of the defendant's car hit the victim, Greg Amman, whom the parties stipulated had a blood alcohol content of 0.09 percent by weight, "and kind of rolled him along the side, and at the post—around the door post it threw him off and he sort of slid ending up almost in the center line."

The evidence supporting the verdict establishes that the defendant was driving approximately ninety miles an hour when the right front fender of his car struck the decedent, and seventy to

eighty miles an hour a quarter to half a mile down the road. Mr. Frederick testified that the car struck the victim just as Mr. Tims had completed passing him. At that time, he was traveling at forty-five miles an hour himself, and the defendant was traveling at ninety miles an hour.

John Gough testified that as he was traveling northbound on the inside (west) lane of Jennings Road about one-half to one-quarter mile south of the accident, "I seen a body flying through the air, a blue Trans Am goin'—well, after I seen the body comin' in my lane, so I come to a stop, and the Trans Am went by me on the right and another car went by me on the left—a silver Camaro." Mr. Gough, a thirty-two-year-old former drag racer, estimated that the blue Trans Am was traveling seventy to eighty miles an hour at the time it passed him.

Two separate sets of recently made skid marks were observed at the scene of the accident: a set of marks sixty-one feet long, crossing the center line, and a set of skid marks twenty-nine feet long, following those. Officer Caterer testified that the gap between the two sets of skid marks could be caused by one of two factors: "the fading of the brakes or the fact that the tire was locked and sliding but just not merely making a mark on that concrete surface," which he had previously explained does not show skid marks well.

An accident reconstruction expert who was asked about the minimum speed necessary to produce a skid mark sixty-one feet long[1] answered that a car must be traveling at a minimum speed

---

[1] For purposes of the hypothetical question, the prosecutor seems to have made the charitable assumption that the defendant was responsible for only the first set of skid marks, even though the evidence indicated that the defendant was traveling fast enough to make both sets of marks, and both sets of marks were recently made at the time of the accident.

of about thirty-nine to forty-three miles an hour.[2]
The figure of thirty-nine to forty-three miles an
hour appears to be calculated with the assumption
that the defendant's car stopped at the end of
sixty-one feet. As stated previously, however, the
defendant did not stop either when he struck the
victim or at the end of the first skid mark, and
instead drove on at a speed of between seventy
and eighty miles an hour.

The defendant did not challenge the sufficiency
of the evidence on appeal. Instead, he claimed that
the trial court erred in instructing the jury that
the defendant's conduct must be " 'a substantial'
cause of the fatal accident." Defense counsel, who

[2] In his closing argument, the prosecutor described this testimony
incorrectly:

> You heard Sergeant Caterer testify. Accident reconstruction
> expert. You heard him give a minimum speed of 22 when Mr.
> Amman was hit, or an [sic] maximum speed of 39 to 43.

The closing argument of the defendant's attorney, however, demonstrates that the expert's testimony was clear to the parties and the jury:

> But we have presented by the prosecution an expert, who
> using scientific data concluded that *at a minimum,* based upon
> the slide of the young man's body, *at a minimum* the speed was
> 22 miles an hour. Based upon the 61 foot skid mark, *the
> minimum speed* was 39 to 43 miles per hour.

The dissent states that we disregard the scientific evidence as
incredulous and rely on the testimony of Mr. Gough. *Post* at 113, n 2.
However, the dissent misinterprets our reliance on Mr. Gough's
testimony. We accept, without qualification, the scientific evidence
and accident reconstructionist's expert testimony. The expert testimony presents an opinion on the basis of hypothetical facts that were
not in existence in the present case. Namely, in the hypothetical
example, the defendant's vehicle came to a stop when he struck the
victim. However, in the present case, Mr. Gough witnessed the
accident and testified that defendant's vehicle did not, in fact, come to
a stop when he struck the victim, but instead, continued beyond the
point of impact. The source of our disagreement with the dissent's
interpretation of the facts rests with its failure to appreciate the
distinction between the expert's response to the hypothetical example
and the facts as they exist in the present case.

argued in closing that the victim darted out in front of the defendant's car and that the defendant could not have avoided the accident, had requested an instruction that the defendant's conduct must be "the" cause of the accident. The Court of Appeals agreed that the instruction was erroneous, and reversed. 202 Mich App 335, 339-340; 508 NW2d 175 (1993). We granted the prosecutor's application for leave to appeal. 445 Mich 862 (1994).

### B

#### PEOPLE v KNEIP

At approximately 1:50 A.M. on August 25, 1990, Steven Barnes was killed when defendant Kneip's vehicle struck him. Mr. Barnes, a barefoot pedestrian, clad only in a pair of shorts and carrying his tennis shoes—one in each hand—was slowly crossing Haggerty Road near Cherry Hill Road in Canton Township. This area was dark and was not illuminated by artificial lighting. Mr. Barnes had reached the left-turn lane when defendant's vehicle approached. Defendant, who was driving south on Haggerty Road, proceeded into the left-turn lane in order to negotiate a left turn, when his vehicle struck Mr. Barnes. Defendant was not speeding, and there is no indication that he was driving erratically. However, he was drunk. Thus, his ability to react properly was impaired. A blood alcohol test administered three hours after the accident revealed that defendant had a blood alcohol level of 0.18 percent.

A witness of the accident examined Mr. Barnes immediately after the impact and determined that he was still breathing. As a result of the impact, he was thrown from the left-turn lane into the middle of the northbound lane of Haggerty Road.

His head was pointing east toward the curb, and his feet were pointing west toward the center lane of Haggerty Road. As the witness knelt over Mr. Barnes, a second car approached. The witness tried to flag the car down, but it drove over Mr. Barnes, causing severe internal injuries and narrowly avoiding contact with the witness. Expert testimony indicated that both sets of injuries were severe and independently could have resulted in Mr. Barnes' death.

Defendant was tried in a bench trial before Detroit Recorder's Court Judge Michael F. Sapala. The judge recognized that a conflict exists regarding the proximate cause element.[3] He ruled as follows:

> "When a number of factors contribute to produce an injury, one actor's negligence will not be considered a proximate cause of the harm unless it was a substantial factor in producing the injury."[4]
>
> *      *      *
>
> The defendant's conduct, then, was without question a substantial cause of the death of the deceased.

The court rendered an oral opinion, finding that defendant's negligence was "a" proximate cause of Mr. Barnes' death. He also noted that Mr. Barnes' contributory negligence of walking in the left-turn lane of an extremely dark road, although not considered an affirmative defense, and the negligence of the second driver both were "factors

---

[3] Judge Sapala stated:

There is a serious conflict in the State of Michigan over the issue of whether a defendant's negligence need be the only cause of death, or only a cause of death.

[4] Quoting from *Brisboy v Fibreboard Corp,* 429 Mich 541, 547; 418 NW2d 650 (1988).

leading to the death of the deceased . . . ." Defendant was sentenced to five years probation, with the first year to be spent on a tether. The tether option was subsequently removed, leaving the remaining sentence intact.

The Court of Appeals reversed defendant's conviction. Although the panel believed that "a" proximate cause is the appropriate standard, it was obligated by Administrative Order Nos. 1990-6 and 1993-4 to follow *Tims.* We granted the prosecution's application for leave to appeal. 446 Mich 866 (1994).

II

LEGAL BACKGROUND

Because the causation element for negligent homicide and involuntary manslaughter is defined by the common law, we must examine the case law of Michigan and foreign jurisdictions regarding the proximate cause elements of these crimes. Involuntary manslaughter, of which defendant Kneip was convicted, is proscribed by MCL 750.321; MSA 28.553, which does not specifically define the offense. "Involuntary manslaughter is the unintentional *killing of another* without malice" in combination with a specified culpable act or mental state, *People v Beach,* 429 Mich 450, 477; 418 NW2d 861 (1988) (emphasis added), which includes a causation component. We construe the causation element in accordance with its common-law meaning.

Negligent homicide, of which defendant Tims was convicted, is also proscribed by statute. See MCL 750.324; MSA 28.556. Although the statute includes a causation element, it provides no guidance regarding the scope of that element. Thus,

the scope and necessary connection between the act and injury has been left to common law.

The common-law causation element is comprised of two components, cause-in-fact or proximate/legal cause. In order to convict a defendant of a criminal negligence offense, the prosecutor must prove beyond a reasonable doubt that the defendant's conduct was a factual cause of the fatal accident. Current Michigan practice is to instruct the jury that a defendant's conduct must be "a substantial cause," which appears to combine two verbal formulas employed in other jurisdictions: that a defendant's negligence must be a "but for" cause, or that it must be a "substantial factor."[5]

Although a cause-in-fact relationship is often sufficient, cases arise in which the death is so remote from the defendant's conduct that it would be unjust to permit conviction. In such a case, the question for the jury is whether the defendant's conduct was the proximate or legal cause of the decedent's death. See, e.g., *People v Barnes,* 182 Mich 179, 198; 148 NW 400 (1914).

### III

### THE DEFENDANTS' CLAIM OF ERROR

Each defendant raises the same arguments: he may be convicted only if his conduct was "the" cause of death, and his conviction was erroneous because the trier of fact determined only that his culpable conduct was "a" cause. The rule urged by the defendants, if accepted, would mean that the negligence of either the victim or a third party, if it was also a proximate cause of death, would be a complete defense.

---

[5] See, generally, LaFave & Scott, Criminal Law (2d ed), § 3.12(b), pp 279-281.

The defendants' arguments were accepted by the majority of the Court of Appeals in *Tims.* Although agreeing with the view that the defendant's conduct need only be "a" substantial cause of the accident, the majority reluctantly concluded that this Court's decisions in *People v Barnes, supra, People v Townsend,* 214 Mich 267, 275; 183 NW 177 (1921), and *People v Layman,* 299 Mich 141, 145; 299 NW 840 (1941), held that a defendant's culpable conduct must be "the" cause of death, as opposed to "a" cause:

> Although we recognize that this Court has created a conflict on this issue, we are precluded from resolving it. No conflict exists on the issue within the Michigan Supreme Court. According to our Supreme Court, in order for a defendant to be convicted of vehicular homicide, his conduct must be "the proximate cause" of the death. [202 Mich App 339-340 (MARILYN KELLY, J.).]

On this basis, the Court found that the jury instructions were error requiring reversal.

We agree with the Court of Appeals understanding that the proper test is "a" cause. There is no support in this Court's decisions for the contrary view, and no policy justification for its adoption.

The phrase "the proximate cause" is a legal colloquialism reflecting the reality that, particularly in homicide cases, there is almost invariably only one *culpable* act that could be considered a direct cause—a knife being stabbed, a gun being fired, or a car driven recklessly. The phrase does not imply that a defendant is responsible for harm only when his act is the sole antecedent.

The suggestion that the presence of an additional "cause" of death could be a complete defense to negligent homicide is inconsistent with accepted notions of responsibility. Acceptance of

such a proposition would require, for example, that if an infant died because it was locked in a hot car on a sunny day, and the child was left there by two parents rather than one, neither could be found criminally responsible. Similarly, if a guest died in a hotel fire that began because another guest was setting off firecrackers in a room, the latter guest's extremely culpable conduct would be excused or mitigated if it turned out that, unknown to him at the time, another person doing the same thing also set a fire accidentally at the other end of the hotel. Such examples illustrate the basis for the sound proposition embodied in the doctrine of "a" substantial cause, that joint equal causes do not excuse culpable behavior.

### A

### *PEOPLE v TIMS:* THE ACTS OF THE VICTIM

The other "causal factor" in *Tims* was the alleged negligence of the victim. The defendants' proposed rule, if accepted, would make the negligence of the victim a complete defense in prosecutions of negligent homicide and vehicular manslaughter. Our Court, however, has long held that although a victim's contributory negligence is a factor to consider in determining whether the defendant's negligence caused the victim's death, it is not a defense. In *People v Barnes,* 182 Mich 195 (adopting *State v Campbell,* 82 Conn 671; 74 A 927 (1910), we noted:

"The rule of law concerning contributory negligence by the injured person, as a defense in civil actions for damages for personal injuries, had no application to this case. The State was required to prove the alleged unlawful act of the accused and its consequences, but not that the deceased exer-

cised due care to avoid the consequences of that unlawful act."

We reaffirmed that rule in *People v Campbell,* 237 Mich 424; 212 NW 97 (1927), in which we reversed the defendant's conviction because the trial court excluded evidence of the victim's conduct that was relevant in determining whether the defendant was negligent. In the process, we noted that, although the victim's negligence is admissible for that purpose, it is not a defense:

> The defendant . . . testified that he was keeping a lookout, but that he assumed that no person would be walking out in that part of the highway where he was driving. The deceased were not crossing the highway. . . . Considering the darkness, the misty atmosphere, the slippery condition of the pavement, their position in the highway, the fact that there was a safer place to walk, and their knowledge of the fact that automobiles would be constantly overtaking them from the rear, were the deceased, at the time of the accident, using ordinary care for their own safety? *If they were not, that fact would not be a defense,* but it would be an important factor in the case which the defendant would be entitled to have the jury consider. [*Id.* at 431. Emphasis added.]

This longstanding Michigan rule is no aberration. It appears to be the universal rule.[6]

[6] In our nonexhaustive search, the cases are unanimous.

See, e.g., *State v Malone,* 819 P2d 34 (Alas App, 1991) (the victim's contributory negligence was no defense to criminal negligence); *People v Lett,* 77 Cal App 2d 917; 177 P2d 47 (1947) (the victim's contributory negligence was no defense to vehicular manslaughter); *People v Maire,* 705 P2d 1023 (Colo App, 1985) (the victim's contributory negligence was no defense to vehicular homicide); *Deshazier v State,* 155 Ga App 526; 271 SE2d 664 (1980) (unless it was unforeseeable, the negligence of the victim is no defense in drunk driving homicide); *State v Taylor,* 67 Idaho 313; 177 P2d 468 (1947) (the victim's contributory negligence was no defense to drunk driving

In *Tims,* the trial court properly instructed the jury that it "must consider the conduct of Mr. Amman in determining whether the driving of Mr. Tims was a substantial cause of the accident." Because the alleged negligence of the victim, if established, would not have required acquittal, it was proper to instruct the jury that the defendant's conduct need only be "a" proximate cause of death.

B

*PEOPLE v KNEIP:* THE ACTS OF A THIRD PARTY

*Kneip* involves not only possible negligence by the victim, but also by a third party. It is equally well established that the negligent act of a third party is not a defense, but is only one factor to be considered in ascertaining whether the defendant's negligence caused the victim's death.

This Court's decision in *Townsend,* although not controlling in this case, affirms the rule that the

vehicular manslaughter); *State v Plaspohl,* 239 Ind 324; 157 NE2d 579 (1959) (the victim's contributory negligence was no defense to reckless homicide prosecution arising out of a drag race); *State v Moore,* 129 Iowa 514; 106 NW 16 (1906) ("contributory negligence, if shown, is never a defense or excuse for a crime"); *State v Betts,* 214 Kan 271; 519 P2d 655 (1974) (the victim's contributory negligence was not a defense to drunk driving vehicular manslaughter); *Wilson v State,* 74 Md App 204; 536 A2d 1192 (1988) (the decedent's intoxication was not a defense to vehicular manslaughter); *State v Crace,* 289 NW2d 54 (Minn, 1979) (the victim's negligence was no defense in manslaughter hunting prosecution); *State v Kliegel,* 674 SW2d 64 (Mo App, 1984) (the victim's negligence was no defense to vehicular manslaughter); *State v Rotella,* 196 Neb 741; 246 NW2d 74 (1976) (the victim's negligence was no defense to vehicular homicide); *State v Phelps,* 242 NC 540; 89 SE2d 132 (1955) (the victim's negligence was no defense to vehicular homicide); *Williams v State,* 554 P2d 842 (Okla Crim App, 1976) (the victim's contributory negligence was not a defense to negligent homicide with a vehicle); *Commonwealth v Long,* 425 Pa Super 170; 624 A2d 200 (1993) (the victim's intoxication was not a defense to homicide); *State v Dionne,* 442 A2d 876 (RI, 1982) (unless it amounts to an independent intervening cause, the victim's conduct is irrelevant).

contributory negligence of a third party is not a
defense. The defendant, who had driven while
intoxicated, struck a tree. His passenger died in
the hospital. The defendant objected to the jury
instructions in his trial for involuntary man-
slaughter, which stated that the medical treat-
ment received by the decedent was a defense only
if it was grossly negligent. In affirming the defen-
dant's conviction, this Court recounted that a de-
fendant's act may be the cause of death even if
ordinarily (as opposed to grossly) negligent treat-
ment contributed to the death:

Defendant cannot exonerate himself from crimi-
nal liability by showing that under a different or
more skilful treatment the doctor might have
saved the life of the deceased and thereby have
avoided the natural consequences flowing from the
wounds. Defendant was not entitled to go to the
jury upon the theory claimed unless the medical
treatment was so grossly erroneous or unskilful as
to have been the cause of the death, for it is no
defense to show that other or different medical
treatment might or would have prevented the
natural consequences flowing from the wounds.
[214 Mich 279.]

The Court quoted from a treatise in which the rule
of law was "well stated":

"He who inflicted the injury is liable even
though the medical or surgical treatment which
was the direct cause of the death was erroneous or
unskilful, or although the death was due to the
negligence or failure by the deceased to procure
treatment or take proper care of the wound. The
same is true with respect to the negligence of
nurses or other attendants. This rule is sometimes
stated with the qualification that the wound must
have been mortal or dangerous; but it is usually

held that the defendant is liable, although the wound was not mortal." [*Id.* at 278-279.]

In *Kneip*, the other "causal factor" was the unidentified car that ran over the victim after he was struck by the defendant. The expert testimony, however, was that the victim would have died whether or not he had been struck by the second car.

## IV

### THE POSITION OF THE DISSENTING OPINION

We are apparently unanimous in rejecting the defendants' only claim of error. The signers of the dissenting opinion would nevertheless reverse the defendant's conviction in *Tims* by establishing and applying retrospectively a rule that has not been asked for by the parties or addressed by any court at any stage of this litigation: that a "defendant's conduct sufficiently dominated the other contributing factors . . . to be fairly deemed a criminal proximate cause . . . ." *Post* at 111.

We note that, like the defendants' proposed rule, the dissenters' proposed requirement also fails the test of common sense. Insofar as it requires that a "defendant's conduct dominate[ ] other contributing factors," the justices would apparently forbid any conviction where a death was jointly caused by independent but identical acts, such as parents who leave their child in a hot car to suffocate. From both a common-sense and a legal perspective, we cannot discern any reason that a defendant whose negligent conduct causes the death of a person should be excused by virtue of the fact that another person was also negligent.

To the extent that the proposed requirement is intended to prevent drivers from being convicted

for homicide for accidents that they could not have
avoided, the law has prevented this unjust result
for at least a century. The exacting rules of crimi-
nal causation dictate that a driver is not in fact or
law the cause of a deceased's death unless the
proofs are such that a jury could find beyond a
reasonable doubt that the defendant could have
avoided the accident. Absent such proofs, the de-
fendant is entitled to dismissal of the charge, a
directed verdict, or an order reversing the convic-
tion.

The rule that a defendant may not be convicted
for a crime that he could not have avoided has
long been settled. For example, *Queen v Dalloway,*
2 Cox 273 (CC, 1847) (summarized in Perkins &
Boyce, Criminal Law [3d ed], p 787), involved the
death of a child who suddenly ran out in front of a
horse-drawn vehicle and was killed. The jury was
charged that if, by the utmost care on his part, the
driver could not have prevented the accident, he
must be acquitted.

This Court adopted the same rule in 1914. See
*People v Barnes, supra.* That case involved the
death of a young woman, Mary Robb, who was
fatally injured when she was struck by the defen-
dant's car. The defendant testified that as he drove
within a few feet of two girls, "the Robb girl got in
front of the machine." *Id.* at 183. The trial judge
instructed the jury that if the defendant was
driving in excess of ten miles an hour,

> then he may be found guilty of manslaughter,
> even though he made the best endeavor possible
> under such speed to avert the accident, and even
> though Mary Robb, in bewilderment, or heedless-
> ness, or carelessness, ran in front of the
> automobile . . . . [*Id.* at 189.]

We reversed the defendant's conviction because

"the charge of the court eliminated all necessary connection between the speed of the car and the death of Mary Robb." *Id.* at 197. "From aught that appears in this record, the injury might have occurred just the same if the respondent had been running 9 miles an hour as it would were he running 11 miles an hour." *Id.* at 192.

> [W]ould it be claimed here that, because respondent was by one mile per hour exceeding the legal speed limit, he would be responsible for the death of Mary Robb, if in her excitement and confusion she jumped in front of the car at a time when it was physically impossible for the respondent to stop it before inflicting the injury? Would the mere fact that a car was being operated slightly in excess of the legal speed limit make a respondent guilty of manslaughter if a person wilfully threw himself in front of the car and received injury? To ask these questions is to answer them in the negative. [*Id.* at 195-196.]

By claiming that it has established this principle for the first time, the dissent would invite attacks on convictions obtained under settled rules that presented the identical concept to factfinders, albeit in different words than those now decreed.

Despite protestations to the contrary, the dissent incorrectly advances the notion that a victim's negligence can be a defense to negligent homicide under certain circumstances, rather than simply a factor for the jury to consider. Thus it appears that the dissent holds that unless defendant's act is found to "sufficiently dominate" other causes, a defendant would apparently be entitled to acquittal even if a jury finds that

(1) the defendant was negligent,
(2) the victim would not have died but for the defendant's negligence, and

(3) the death was a foreseeable risk of the defendant's conduct.

The established rule is that the negligence of the victim, if any, should be considered in making determinations 2 and 3. The negligence of the victim is grounds for acquittal only when it shows that the defendant was not negligent or did not cause the decedent's death.[7] Where the jury finds that those requirements are satisfied, the conduct of the victim is not a defense.[8]

A

THE OSTENSIBLE JUSTIFICATION

The dissent attempts to justify the claimed need for a new rule with the claim that "the criminal standard [for causation] should remain higher [than the civil standard]." *Post* at 118. This argument is a non sequitur; the dissent fails to explain why the longstanding criminal standard for causation should be heightened simply because the civil standard has been lowered (by the replacement of the contributory negligence defense with comparative negligence). The relevant rules of criminal causation have been the same for more than a century, and the dissenting opinion has failed to point to any circumstances, actual or hypothetical, in which they would allow an unjust conviction. In sum, the dissenting opinion fails to provide a single reason to change these rules and thereby reverse the conviction in *Tims.*

[7] Even the Pennsylvania instruction quoted by the dissent states that a victim's negligence is not a defense unless it plays such an important role " 'that the defendant's conduct does not amount to a direct and substantial factor in bringing about the death.' " *Post* at 125.

[8] See n 6.

The dissenting opinion relies heavily on *Commonwealth v Root,* 403 Pa 571; 170 A2d 310 (1961), for the proposition that criminal causation rules must be amended because they are tied to tort notions of proximate cause that have been liberalized substantially. See *post* at 119-122. This premise is simply incorrect. As a matter of historical fact, the rules of causation in criminal cases are not tied to the rules of causation in civil cases. For that reason, among others,[9] the rules of criminal causation have not changed a whit in the face of expanding civil liability. The relevant rules have been the same for at least a century. First, the defendant's conduct must be a cause of the harm sine qua non. See, e.g., *People v Barnes, supra.* Second, the harm must be a foreseeable risk of the defendant's conduct. See, e.g., *People v Rockwell,* 39 Mich 503 (1878) (the defendant hit the victim and left him lying in a field where a horse later trampled him to death; the conviction was reversed because the death was unforeseeable). In particular, the rule that the dissenting opinion would change—that foreseeable negligence by the victim is not a defense—seems to have been settled before 1930. See anno: *Negligent homicide as affected by negligence or other misconduct of the decedent,* 67 ALR 922 (collecting cases holding that a victim's negligence is no defense to negligent homicide).

To the extent that *Commonwealth v Root, supra,* holds that a victim's contributory negligence can be a defense, and this is the commentators' read-

---

[9] It would appear that the expansion of civil liability has not altered even the rules of tort causation. Rather, the expansion has been focused primarily on expanding duty (adding duties to warn and duties of supervision) and abolishing privity requirements. To the extent that the liability revolution has touched causation, it has involved what expert testimony is admissible to satisfy the static rules of proximate cause.

ing of that case,[10] it is no longer the law even in Pennsylvania. See, e.g., *Commonwealth v Long*, 425 Pa Super 170; 624 A2d 200 (1993) (holding that the victim's intoxication was not a defense to homicide as long as the victim's death is the natural and foreseeable consequence of the defendant's actions). Even if other jurisdictions have "followed the *Root* rationale," *post* at 121-122, the dissenting opinion does not point to any jurisdiction holding that a victim's negligence can be a defense. As examples, the dissenting opinion cites decisions from New York and Maryland. Both states, however, follow the rule that the negligence of the victim is not a bar to criminal liability.[11] See *People v Cruciani*, 36 NY2d 304, 306; 367 NYS2d 758; 327 NE2d 803 (1975); *People v Joseph*, 11 Misc 2d 219, 237; 172 NYS2d 463 (1958); *Wilson v State*, 74 Md App 204, 213; 536 A2d 1192 (1988).

*Root* has been criticized on other grounds as well. Regarding *Root* and *Commonwealth v Redline*, 391 Pa 486; 137 A2d 472 (1958), Professor LaFave explains that "to the extent that these cases rely wholly or in part upon the requirement of legal cause as a means of limiting these doctrines, they tend to distort the meaning of legal cause." LaFave & Scott, Criminal Law (2d ed), § 3.12(h), p 298.

---

[10] See, e.g., LaFave & Scott, Criminal Law (2d ed), § 3.12(h), p 297: "It is submitted that the true reason for the holding in these two cases is the court's feeling, not clearly expressed in the two cases, that A should not, in all justice, be held for the death of B who was an equally willing and foolhardy participant in the bad conduct which caused his death." Needless to mention, the victims in the present cases were not willing coparticipants.

[11] For example, in *People v Kibbe*, 35 NY2d 407, 410; 362 NYS2d 848; 321 NE2d 773 (1974), cited by the dissent, the court affirmed the defendants' convictions for murder where they left the "thoroughly intoxicated" victim at the side of the road without his eyeglasses and where he was later hit by a truck. Despite the fact that both the victim and the truck driver might have been considered negligent, the court did not disturb the jury's determination that the defendants had "cause[d] the death of another . . . ." *Id.* at 413.

B

### HARMLESS ERROR ANALYSIS

Despite the fact that a majority of this Court has rejected the only claim of error in *Tims,* it appears that a new trial will be ordered. The Court in *Tims* is equally divided because of harmless error analysis by the dissenting justices that is factually incorrect and contrary to the standard but recently endorsed by five members of this Court.[12] Even though we do not agree with the dissent's proposed rule for proximate causation, we note that the instructions, arguments, and verdict show that the jury in *Tims* made the finding necessary to satisfy that test. Consequently, the conviction should be reinstated even under the dissent's test.

The dissent would hold that its standard of criminal causation is satisfied when the trier of fact finds that the defendant should have been able to avoid the accident. It would affirm the conviction in *Kneip* because the trial judge satisfied its requirement by virtue of making the following finding:

> "In this case, there was nothing wrong with the defendant's car; the headlights were functional. In other words, all reasonably prudent drivers must be able to drive, and in fact drive in a manner so as to avoid hitting pedestrians in the roadway; even if a pedestrian's presence is unexpected; except, of course, where you truly have a case of an individual darting in front of a car as it approaches; where you have a pure accident. That's not the case here.

---

[12] Given that the instructions in *Tims* were sufficient to protect the defendant's rights, the dissent's implicit assertion that the test for harmlessness of an unpreserved nonconstitutional error is whether the error was harmless "beyond a reasonable doubt," *post* at 128, is erroneous. See *People v Grant,* 445 Mich 535; 520 NW2d 123 (1994).

"I find that although the area is clearly dark, and at the time of the impact there was no meaningful street or store lighting; *the defendant should have easily been able to avoid the deceased; especially when he was not speeding, or indeed when he was probably under the speed limit.*" [*Post* at 127-128. Emphasis added.]

This same finding was also made by the trier of· fact in *Tims.* The question whether the defendant should have been able to avoid the victim was the primary focus of the trial. Counsel repeatedly argued that his client should not be convicted because he could not have avoided the accident.[13] The jury was instructed that it must not convict the defendant if the accident was unavoidable:

Slight negligence is characterized by acts which are not naturally or inherently dangerous to life, which only an extremely careful person would have foreseen as likely to produce injury to another. *The fact that an accident occurred is not in itself any evidence of negligence. Whatever is unavoidable by the exercise of due and reasonable care is not a crime.* Slight negligence is not a crime. It is that degree or kind of negligence

[13] For example, Mr. Tims' lawyer argued the following during his closing:

[M]y client's conduct in operating his motor vehicle had nothing at all to do with the cause of the accident. The Court is going to charge you that my client's conduct, if he is to be guilty of anything, has to be a substantial cause of the accident. My client, as we said at the beginning of the trial, he veered his vehicle over into the fourth lane to avoid hitting whatever was in that highway to cause him to veer. He undertook to avoid that accident. The decedent ran into the roadway in front of two vehicles. There came a time when he was in a zone of safety in the double yellow line and he moved from that zone of safety. And Mr. Fredericks told you, if he had not moved he would not have been hit. His judgment was impaired. He used bad judgment running out into the road and he used bad judgment leaving that zone of safety.

which is below or less than ordinary negligence. In this case if you find that a defendant was negligent, but his negligence was only slight negligence, then you must return a verdict of not guilty. [Emphasis added.]

Anticipating this instruction, Mr. Tims' attorney incorporated it into his argument.[14] In addition, the jury was specifically instructed that it should consider the victim's negligence, if any, in determining whether the defendant was the cause of the accident.[15]

The jurors' decision to convict in the face of these instructions and arguments compels the conclusion that they rejected the defendant's argument and found that the defendant could have avoided the victim with the exercise of reasonable care.[16] Because of this finding, which is sufficient to satisfy the dissent's "new" requirement, any technical imperfection in the instructions was not error:

Jury instructions are reviewed as a whole rather

---

[14] He argued the following:

Another significant part of the instruction is this. The fact that an accident occurred is not in itself any evidence of negligence. The fact that an accident occurred is not in itself any evidence of negligence. Whatever is unavoidable by the exercise of due and reasonable care is not a crime. Whatever is unavoidable by the exercise of due and reasonable care is not a crime. Any crime. My client was confronted with an unavoidable accident. A young man ran out in front of his vehicle and he did what he could do to avoid that. It was unavoidable.

[15] In other words, the jury was given an instruction *opposite* the one found erroneous in *Commonwealth v Molinaro,* 429 Pa Super 29; 631 A2d 1040 (1993), a case relied on by the dissent. See *post* at 124-125.

[16] It is obvious why the defendant does not challenge the sufficiency of the evidence to support this conclusion. The defendant could have avoided the collision by not driving ninety miles an hour on a road with a posted speed limit of forty-five. The death of a pedestrian is a natural and probable consequence of this type of negligence.

than examined piecemeal to establish error. *People v Watkins,* 178 Mich App 439, 450; 444 NW2d 201 (1989), rev'd on other grounds 438 Mich 627; 475 NW2d 727 (1991). Even if somewhat imperfect, there is no error if the instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights. *Id.* [*People v Vaughn,* 447 Mich 217, 232; 524 NW2d 217 (1994) (opinion of BRICKLEY, J.).]

The dissenters' decision to reach opposite results in these cases that are apparently identical for purposes of the relevant inquiry is inconsistent with the most basic notions of justice.

V

For the foregoing reasons, we would reverse the decisions of the Court of Appeals in *Kneip,* and would reinstate the defendant's conviction. In *Tims,* we would reverse the decision of the Court of Appeals and reinstate the defendant's conviction.

BOYLE and RILEY, JJ., concurred with MALLETT, J.

WEAVER, J., concurred only in *People v Kneip.*

CAVANAGH, J. (*dissenting*).

I

The cases before us raise the issue of criminal proximate cause in criminal negligence cases. In each case, the Court of Appeals reversed the defendant's conviction because the trier of fact did not address whether the defendant's conduct was

"the" proximate cause.[1] We agree with both defendants that finding that the defendant's conduct was "a" substantial factor, which is the civil law causation standard, is insufficient in a criminal negligence case. We believe that criminal liability requires a more direct causal connection than merely finding that the defendant's actions were "a" cause. Where there are multiple independent causes contributing to the victim's injury or death, so that the defendant's conduct alone would not have caused the death, we would not impose liability for criminal negligence unless the defendant's conduct sufficiently dominated the other contributing factors, to be fairly deemed a criminal proximate cause, and the injury was reasonably foreseeable from the defendant's negligence. More specifically, even though a victim's contributory negligence is not an affirmative defense, it is a factor to be considered by the trier of fact in determining whether the prima facie element of proximate cause has been proven beyond a reasonable doubt.

Therefore, in *People v Tims,* we would affirm the judgment of the Court of Appeals, which vacated the conviction, and we would remand for a new trial because the jury instructions did not require the jury to make any proximate cause determination beyond the threshold issue of cause-in-fact. On remand, we would direct the trial court to instruct the jury that it should *also* find that the defendant's negligence sufficiently dominated the victim's negligence, in order to find that the defendant was a criminal proximate cause of the victim's death.

In *People v Kneip,* even though the trial court erroneously relied on a civil law test for causation,

[1] 202 Mich App 335; 508 NW2d 175 (1993); unpublished opinion per curiam of the Court of Appeals, issued March 10, 1994 (Docket No. 144608).

we find that the trial judge's opinion from the
bench essentially found that the defendant's gross
negligence sufficiently dominated the victim's neg-
ligence to be fairly treated as a criminal proximate
cause of the victim's death. The second driver's
negligence was a reasonably foreseeable interven-
ing event that does not relieve the defendant of
criminal liability. Therefore, we concur with the
majority in reversing the judgment of the Court of
Appeals, and reinstating the conviction.

II

A. *PEOPLE v TIMS*

On July 9, 1989, at approximately 8:30 P.M.,
Greg Amman was killed when the defendant's
vehicle struck him. The facts were vigorously con-
tested at trial. Shortly before the accident, the
defendant and Bobby Osborne had engaged in a
drag race on Jennings Road, between Pierson and
Pasadena Roads, in Mt. Morris Township. Various
lay witnesses estimated that the vehicles were
traveling at speeds between seventy and ninety
miles an hour, however, one witness testified that
the codefendant's vehicle stopped about a quarter
of a mile before the scene of the accident. A police
officer testified that the words "Finish" had been
marked in white paint on Jennings Road approxi-
mately 1,578 feet before the point of impact. The
officer further testified that the road dipped down
and then back up, with the highest point in the
road being the point of impact.

The victim ran onto Jennings Road to retrieve a
whiffle ball, into the path of the defendant. The
victim's view of the defendant's vehicle was
blocked by another vehicle. Likewise, the defen-
dant's view of the victim was blocked by the same
vehicle. The defendant attempted to avoid the

victim, but failed. An accident reconstruction expert testified that skid marks indicated that the defendant was, at a minimum, traveling between thirty-nine and forty-three miles an hour "at the beginning of the skid."[2] The expert's conclusion was based in part on his finding that the victim's body slid twenty-seven feet from the point of impact to its final resting place. The expert testified that in accident reconstruction, the procedure is to work backward from the information that is collected at the scene. Therefore, he concluded that in order for a human body to slide twenty-seven feet on the then-current road conditions, the defendant's vehicle would have been traveling at a minimum speed of twenty-two miles an hour.[3] The

[2] The prosecution's expert testified that there were skid marks as long as sixty-one feet. He further testified that with the concurrent road conditions, a vehicle traveling forty miles an hour would need up to eighty-eight feet to stop. The lead opinion summarily rejects this scientific evidence as incredible, apparently claiming to have a better appreciation of the scene than the expert witness who arrived shortly after the accident occurred. Further, the lead opinion's reliance on the testimony of John Gough should be qualified by the conflicting testimony that the Camaro had pulled off the road a quarter of a mile before the accident. *Ante* at 90. Because of its conflict with other "direct" testimony, Mr. Gough's testimony should be given cautionary reliance. Moreover, it is clear that the jury rejected the argument that the defendant was traveling "approximately ninety miles an hour at the point" of impact because it acquitted the defendant of second-degree murder and of gross negligence manslaughter. Because of the wide disparity in the evidence between twenty-two miles an hour and ninety miles an hour, the lead opinion's pronouncement that the verdict establishes that the true speed was ninety miles an hour is difficult to understand. If the jury truly believed that the defendant was traveling at a speed of ninety miles an hour, it would have rationally returned a verdict of malicious or grossly negligent conduct. Its finding of merely ordinary negligence conduct is fundamentally at odds with the lead opinion's characterization of this case.

[3] The expert testified in part:

We know that the pedestrian essentially had no velocity on the access of Jennings Road. He was running across the road. Something gave his body velocity causing him to slide 27 feet, and we know at what rate a body decelerates on a hard surface like that, so we can determine a minimum speed for the body sliding the 27 feet to rest. In essence, you work backwards. The

posted speed limit was forty-five miles an hour. At the time of his death, the victim had a blood alcohol level of 0.09 percent.

The defendant was charged with second-degree murder. The prosecution's theory was that the codefendants had intentionally engaged in a drag race, exhibiting a wanton disregard that a death or great bodily harm would occur, and that the drag race caused the death. The defense theory was that the race had ended before the impact with the victim, that the accident was unavoidable, and that the victim's own negligence led to his death. After a four-day jury trial, the trial court instructed the jury regarding the causation element of each of the degrees of homicide ·as follows:

> Each of these degrees of homicide require a finding . . . that the conduct of Mr. Tims was a substantial cause of the fatal accident.

The defendant had objected to the instruction, arguing that it was necessary for the jury to find that the defendant's conduct was "the" substantial cause of the accident. The defendant was convicted of the lesser-included offense of negligent homicide,[4] and was sentenced to sixteen to twenty-four months imprisonment.

The defendant appealed as of right to the Court of Appeals. The panel felt constrained to follow *People v Layman,* 299 Mich 141, 145; 299 NW 840 (1941), *People v Townsend,* 214 Mich 267, 275; 183 NW 177 (1921), and *People v Barnes,* 182 Mich 179, 199; 148 NW 400 (1914), stating that this

pedestrian was hit and slid 27 feet. So we can determine a speed required to cause that pedestrian to slide on that surface 27 feet.

[4] MCL 750.324; MSA 28.556.

Court's holdings in those cases required that the defendant's conduct be "the" proximate cause of the victim's death.[5] The panel reversed and remanded for a new trial, stating that the trial court erred in instructing the jury that the defendant's conduct must be "a" rather than "the" substantial cause of the victim's death. We granted the prosecution's application for leave to appeal.[6]

### B. *PEOPLE v KNEIP*

On August 25, 1990, at approximately 1:50 A.M., Steven Barnes was killed when the defendant's vehicle struck him. The victim, a barefoot pedestrian, clad only in a pair of shorts and carrying his tennis shoes—one in each hand—was crossing Haggerty Road near Cherry Hill Road in Canton Township. This area was not illuminated by artificial lighting. The victim had reached the left-turn lane when the defendant's vehicle approached. The defendant, who was driving south on Haggerty Road, entered the left-turn lane in order to make a left turn, when his vehicle struck the victim.

The defendant was not speeding, and there is no indication that he was driving erratically. However, he was drunk.[7]

As a result of the impact, the victim was thrown from the left-turn lane into the middle of the northbound lane of Haggerty Road. His head was pointing east toward the curb, and his feet were pointing west toward the center lane of Haggerty Road. A witness to the accident examined the victim immediately after the impact and deter-

---

[5] 202 Mich App 339-340.

[6] 445 Mich 862 (1994).

[7] A blood alcohol test administered approximately three hours after the accident revealed that the defendant had a blood alcohol level of 0.18 percent.

mined that he was still breathing. As the witness knelt over the victim, a second car approached. The witness tried to flag the car down, but it drove over the victim, causing severe internal injuries. The expert testimony indicated that both sets of injuries were severe and independently could have resulted in the victim's death.

The defendant was tried in a bench trial. The trial court recognized that a conflict existed regarding the proximate cause element and applied the standard used in civil cases. The trial court stated:

> "When a number of factors contribute to produce an injury, one actor's negligence will not be considered a proximate cause of the harm unless it was a substantial factor in producing the injury."[8]
>
> * * *
>
> The defendant's conduct, then, was without question a substantial cause of the death of the deceased.

It also noted that the victim's contributory negligence of walking in the left-turn lane of an extremely dark road, although not considered an affirmative defense, and the negligence of the second driver, both were "factors leading to the death of the deceased . . . ." The defendant was convicted of involuntary manslaughter.[9] He was sentenced to five years probation, with the first year to be spent on a tether. The tether option subsequently was removed, leaving the remaining sentence intact.

The Court of Appeals reversed the defendant's conviction, stating that it was obligated to follow

---

[8] The trial court was quoting *Brisboy v Fibreboard Corp,* 429 Mich 541, 547; 418 NW2d 650 (1988).

[9] MCL 750.321; MSA 28.553.

*Tims.*[10] We granted the prosecution's application for leave to appeal.[11]

### III

In both *Tims* and *Kneip,* the trier of fact merely determined that the defendant's conduct was a substantial factor of the victim's death. The prosecutor in *Kneip* argues that the terms "substantial" factor and "proximate" cause are interchangeable. We disagree. We believe that the "but for" and "substantial factor" cause-in-fact tests are merely the first step in determining causation. Finding that the defendant's conduct was a substantial factor, or a but-for cause of the victim's injury is not the end of the inquiry: "[T]he substantial factor test is one of exclusion only. What was not a substantial factor in causing harm was not a proximate cause thereof. What was a substantial factor may have been a proximate cause— or it may not." Perkins & Boyce, Criminal Law (3d ed), p 780. As in tort, criminal law requires a second level of inquiry into proximate causation, which is often labeled some type of reasonably foreseeable or natural and probable result test. Proximate cause is the inquiry into whether the defendant *should* be held legally liable for the cause-in-fact result of his conduct. Specifically, is it just or fair to hold this defendant criminally liable for negligent conduct when other contributing factors played a significant role in bringing about the result? That is the issue facing us in the instant case.

We believe the Court of Appeals confused the

---

[10] Although the Court of Appeals panel in *Kneip* believed that "a" substantial cause is the appropriate standard, it was compelled to follow *Tims* pursuant to Administrative Order No. 1990-6, extended by Administrative Order Nos. 1991-11, 1992-8, and 1993-4.

[11] 446 Mich 866 (1994).

issue by focusing on whether the defendant's conduct must be "the sole" proximate cause. There can be situations in which more than one person's conduct is properly charged as a proximate cause. For instance, where two or more individuals are acting in concert, such as in a conspiracy or an aiding and abetting situation, each actor's conduct is fairly imputed to the other actors. Likewise, where two or more individuals' autonomous actions coincide by chance, and each person's conduct *alone* could have caused the result, then each person may be charged independently. In either of these situations, each person's conduct can be fairly charged as a proximate cause.[12]

The grey area arises when a result happens as a consequence of a combination of independent events. Then we believe that the proximate cause inquiry is whether this defendant's conduct, as a substantial factor in bringing about a reasonably foreseeable resulting injury, sufficiently dominated the other causal factors, to be fairly deemed a *criminal* proximate cause.

IV

The prosecutor in *Tims* argues that causation should be the same in civil and criminal law contexts. Likewise, the trial court in *Kneip* used a civil law standard for causation. The defendants and the defense amicus curiae[13] counter that the criminal standard should remain higher. We agree because a mere finding that the defendant's con-

[12] The majority misinterprets our conclusion when it opines that independent acts of negligence will be excused. *Ante* at 101. If the defendant's conduct, in and of itself (i.e., but-for), caused the harm, then the defendant is properly held criminally liable if the harm was the natural and probable result of his conduct because the victim's conduct was not a contributing cause. Further, we expressly conclude that accomplice liability is not at issue in the present case.

[13] Criminal Defense Attorneys of Michigan.

duct was a substantial factor, as required by tort law, is insufficient in the criminal context.

The *Tims* prosecutor has failed to recognize that tort causation principles should not determine criminal causation. Because criminal penalties are generally far more burdensome to defendants than tort remedies, we believe that the causation standards that we use to impose criminal liability should remain more demanding. Moreover, as the defense amicus curiae points out, unlike tort law, which apportions liability among the responsible parties, criminal law is an all-or-nothing decision of guilty or not guilty.

The majority contends that an instruction that the defendant's conduct was a substantial factor is sufficient. *Ante* at 95. In tort law, the required finding that the actor was a substantial factor is merely a test to find that the actor contributed in a measurable way to the resulting harm. Even minimal causes will be held accountable for corresponding portions of the resulting harm. In sharp contrast, we believe that minimal causes should not be subject to criminal penalties.

In *People v Harding,* 443 Mich 693, 738; 506 NW2d 482 (1993) (Cavanagh, C.J., concurring in part and dissenting in part), it was noted that "[a] more demanding standard is warranted because the potential deprivation of personal rights is obviously much more extreme in criminal, as opposed to tort, actions." That opinion cited *Commonwealth v Root,* 403 Pa 571, 575, 580; 170 A2d 310 (1961), which had held that a more direct proximate cause connection is required in criminal homicide prosecutions.[14]

---

[14] Contrary to the majority's assertions, the Pennsylvania Supreme Court still considered *Root* good law when it cited the case in *Commonwealth v Mayhue,* 536 Pa 271, 309; 639 A2d 421 (1994). The majority cites *Commonwealth v Long,* 425 Pa Super 170; 624 A2d 200

Our Court of Appeals adopted the *Root* reasoning in *People v Scott,* 29 Mich App 549, 554-555; 185 NW2d 576 (1971). The *Scott* panel quoted from *Root* at 574:

> "While precedent is to be found for application of the tort law concept of 'proximate cause' in fixing responsibility for criminal homicide, the want of any rational basis for its use in determining criminal liability can no longer be properly disregarded. When proximate cause was first borrowed from the field of tort law and applied to homicide prosecutions in Pennsylvania, the concept connoted a much more direct causal relation in producing the alleged culpable result than it does today. Proximate cause, as an essential element of a tort founded in negligence, has undergone in recent times, and is still undergoing, a marked extension. More specifically, this area of civil law has been progressively liberalized in favor of claims for damages for personal injuries to which careless conduct of others can in some way be associated. To persist in applying the tort liability concept of proximate cause to prosecutions for criminal homicide after the marked expansion of *civil* liability of defendants in tort actions for negligence would be to extend possible *criminal* liability to persons chargeable with unlawful or reckless conduct in circumstances not generally considered to present the likelihood of a resultant death."

The *Scott* panel concluded:

> Although neither party is able to cite authority which requires that the defendant's criminally negligent act be the only direct and proximate

(1993). *Ante* at 106. *Long* stated: "Our supreme court has long held that establishing causation under a tort theory is insufficient to impose criminal liability upon a person." *Id.* at 176, citing *Root* at 575. In *Long,* the court held that there was insufficient evidence that the victim was intoxicated and therefore no instruction was required. *Id.* at 177.

cause of the ensuing homicide, *this Court* feels
that the reasoning proffered by the Pennsylvania
court in *Commonwealth v Root, supra,* constitutes
the *better* standard. In criminal prosecutions there
must be a more direct causal connection between
the criminal conduct of the defendant and the
homicide charged than is required by the tort
liability concept of proximate cause. [*Id.* at 558.
Emphasis added.]

Here, the *Tims* panel struggled with whether to
apply *Scott* or *People v Dolen,* 89 Mich App 277;
279 NW2d 539 (1977), which stated that "a" proxi-
mate cause was sufficient. *Tims* at 337. A careful
reading of *Dolen* reveals that the *Dolen* panel
*approved* of the *Root* reasoning that criminal lia-
bility requires a more direct causal connection
than civil liability. *Id.* at 281-282.[15] In *Dolen,* the
panel found that in reaching a guilty verdict, the
jury must have concluded that the other driver
was *not* a proximate cause of the victim's death.[16]
Because there was only one cause of the victim's
death, the *Dolen* panel did *not* decide what jury
instructions would have been necessary had the
jury found that both drivers were proximate
causes of the victim's death.

A more recent Pennsylvania court summarized
post-*Root* applications of the principle that crimi-
nal proximate cause requires a higher standard
than civil proximate cause. *Commonwealth v Re-*

---

[15] Moreover, we believe that *Dolen* misread the *Scott* decision as
holding that the defendant's conduct must be the *only* direct and
proximate cause of the victim's death. *Id.* at 280-281. The *Scott* panel
did not hold this, in fact, it specifically *rejected* this argument when it
held that the *Root* reasoning was the better standard. *Scott* merely
held that criminal liability requires *a more direct* causal connection,
not that the defendant's conduct be the *only* causal connection.

[16] In *Dolen,* the trial court instructed the jury that if the other
driver was a proximate cause of the accident, then the defendant was
not guilty. The panel held that the erroneous instructions were in the
defendant's favor. *Id.* at 280.

*menter,* 410 Pa Super 9; 598 A2d 1300 (1991).[17] The *Rementer* court instructively explained:

It is difficult to draw a bright line between causation in the criminal law and in the tort law. Certain principles can, however, be ascertained. In order to impose criminal liability, causation must be direct and substantial. Defendants should not be exposed to a loss of liberty based on the tort standard which only provides that the event giving rise to the injury is a substantial factor. Although typically the tort context refers only to substantial and not to direct and substantial as in the criminal context, the additional language in the criminal law does not provide much guidance. Therefore, criminal causation has come to involve a case-by-case social determination; i.e., is it just or fair under the facts of the case to expose the defendant to criminal sanctions. In other words, was the defendant's conduct so directly and substantially linked to the actual result as to give rise to the imposition of criminal liability or was the actual result so remote and attenuated that it would be unfair to hold the defendant responsible for it? [*Id.* at 18-19.]

Other jurisdictions have likewise followed the *Root* rationale.[18] We believe that we should remain in their ranks.

---

[17] See *Commonwealth v Shoup,* 423 Pa Super 12, 18; 620 A2d 15 (1993):

The tort concept of proximate cause plays no role in a prosecution for criminal homicide.

[18] For example, New York's highest court stated:

We subscribe to the requirement that the defendants' actions must be *a sufficiently direct cause* of the ensuing death before there can be any imposition of criminal liability, and recognize, of course, that this standard is greater than that required to serve as a basis for tort liability. [*People v Kibbe,* 35 NY2d 407, 413; 362 NYS2d 848; 321 NE2d 773 (1974). *Kibbe* later sought a writ of habeas corpus, which was granted in a federal court. See *Henderson v Kibbe,* 431 US 145; 97 S Ct 1730; 52 L Ed 2d

The longstanding rule is that while the victim's contributory negligence is not an affirmative defense, it *is* a factor in determining whether the defendant caused the resulting harm.[19] We have no intention of altering that doctrine. However, fairness dictates that the prima facie causation element, particularly in criminal negligence cases, requires more than the mere finding that the defendant's conduct was a factor contributing to the resulting harm. We believe that in criminal negligence cases, when the defendant's conduct alone could not have independently resulted in the harm, the trier of fact must determine, beyond a reasonable doubt, that the defendant's conduct sufficiently dominated other contributing factors to be fairly deemed a criminal proximate cause.

Although the precise language may change from case to case, this idea is certainly not new. In *Barnes,* the Court considered whether the victim's death was "a direct and natural result" of the defendant's conduct. *Id.* at 196. In *Townsend,* the trial court instructed the jury that the victim's

203 (1977), which reversed the writ, and, in effect, affirmed the New York court.]

See *People v Warner-Lambert Co,* 51 NY2d 295, 306; 434 NYS2d 159; 414 NE2d 660 (1980) (rejecting "sweeping theory" of civil proximate cause in criminal cases). See also *Campbell v State,* 293 Md 438, 450-451; 444 A2d 1034 (1982), in which the court stated:

> [T]he tort liability concept of proximate cause has no proper place in prosecutions for criminal homicide. There is a difference between the underlying rationale of tort and criminal law. Tort law is primarily concerned with who shall bear the burden of loss, while criminal law is concerned with the imposition of punishment.

[19] *People v Clark,* 295 Mich 704, 708-709; 295 NW 370 (1940); *People v Campbell,* 237 Mich 424, 430; 212 NW 97 (1927); *Barnes* at 195. See also *Coates v State,* 90 Md App 105, 118; 600 A2d 856 (1992) (evidence of intoxication is relevant to causation).

death must have been " 'a direct and natural result' " of the defendant's conduct. *Id.* at 277. In *Layman,* the trial court instructed the jury that " 'Proximate cause means the direct cause . . . .' " *Id.* at 146. All these cases required more than a mere finding that the defendant's conduct was a significant factor in causing the death; they required that the defendant's conduct was a direct cause of the death.

In the instant case, the defendants each were found to be a substantial factor in the resulting deaths. However, under the longstanding precedent in this state, the triers of fact were further required to determine whether the defendant's conduct was a direct cause.

A Pennsylvania case addressed this concept. *Commonwealth v Molinaro,* 429 Pa Super 29; 631 A2d 1040 (1993). There, the trial court instructed the jury:

> "In a criminal case, you are not to concern yourselves with the actions of the victim. Contributory negligence of the victim is not a defense to a criminal charge of homicide by motor vehicle if you find that the defendant's actions were a substantial factor in causing death." [*Id.* at 35.]

The appellate court reversed, stating:

> At no point was the jury instructed that the victim's conduct should be considered in connection with the causation issue.
>
> This instruction contains an inaccurate statement of the applicable law. Under the case law, the jury must be instructed to consider the victim's actions in connection with the causation determination, where the evidence indicates that those actions may have contributed to the accident. [*Id.* at 35-36. Citation omitted.]

The court quoted with approval "Pennsylvania Suggested Standard Jury Instruction 15.2501C(3)." That instruction provided:

> "(1) You cannot find that the defendant killed [the victim] unless you are satisfied beyond a reasonable doubt that the defendant's conduct was a direct cause of his death.
> "(2) In order to be a direct cause of a death, a person's conduct must be a direct and substantial factor in bringing about the death. There can be more than one direct cause of a death. A defendant who is a direct cause of a death may be criminally liable even though there are other direct causes.
> "(3) A defendant is not a direct cause of a death if the actions of the victim . . . plays [sic] such an independent important and overriding role in bringing about the death, compared with the role of the defendant, that the defendant's conduct does not amount to a direct and substantial factor in bringing about the death." [*Id.* at 36-37.]

In cases such as the two before us, we believe that the jury will find this inquiry easier to understand by phrasing the instruction in terms of sufficient dominance and fairness. We believe that the jury can best determine whether it is fair, on the facts before it, to impose criminal liability on a negligent defendant by instructing the jury that it must find that the defendant's negligence sufficiently dominated the other contributing factors.

v

In *Tims,* the actions of independently acting individuals combined to result in the victim's death: the victim's negligence and the defendant's negligence. Therefore, the cause-in-fact test is whether the defendant's conduct was a substantial

factor in bringing about the victim's death. The
trial judge instructed the jury about negligent.
homicide:

> Another lesser included offense is the crime of
> negligent homicide.
> To establish that Mr. Tims is guilty of that
> crime the prosecution must prove beyond a reason-
> able doubt, first, that Mr. Tims was driving a
> motor vehicle on or about July 9, 1989, in Genesee
> County.
> Second, that he was driving in a careless or
> negligent manner.
> Third, that the defendant's negligence was *a
> substantial cause* of an accident resulting in fatal
> injuries to Mr. Amman.[20] [Emphasis added.]

The defendant adequately preserved his objec-
tion to the instructions during the conference
discussing jury instructions by arguing that the
instructions should require that the jury find that
the defendant was "the" substantial cause of the
death. The trial judge failed to adequately instruct
the jury about proximate cause. We find that this
was error requiring reversal because it was not
harmless beyond a reasonable doubt. The inade-
quate instruction pertained to an essential ele-
ment, and, if properly instructed, the jury may
have reached a different verdict because we cannot
conclude that it necessarily found that the defen-
dant's negligence sufficiently dominated the vic-
tim's negligence to be fairly treated as a criminal

---

[20] The trial court also instructed the jury:

> Negligence, if any, on the part of the deceased is not a
> defense to second degree murder, or to involuntary manslaugh-
> ter, or to negligent homicide. However, you must consider the
> conduct of Mr. Amman in determining whether the driving of
> Mr. Tims was a substantial cause of the accident.

proximate cause of the death.[21] We remand for a new trial. On remand, we direct the trial court to further instruct the jury that it must also find that the defendant's negligence sufficiently dominated the victim's negligence, to be fairly treated as a criminal proximate cause of the victim's death, if that death was also reasonably foreseeable from the defendant's negligence.

In *Kneip,* the actions of three independent persons combined to result in the victim's death: the victim's negligence, the defendant's gross negligence, and the second driver's subsequent negligence. Again, we would apply the substantial-factor test to the original collision between the defendant's car and the victim. This collision set in motion a "but-for" chain of events, whereby the victim was struck again by the second driver. This intervening collision was exactly the type of injury that is reasonably foreseeable from the first collision. Consequently, the *negligence* of the second driver would not qualify as a superseding cause that would cut off the first driver's liability.

At the bench trial, the trial court applied the tort law standard[22] and concluded "the defendant's conduct was a substantial cause of the death." However, the trial court further stated:

> In this case, there was nothing wrong with the defendant's car; the headlights were functional. In other words, all reasonably prudent drivers must be able to drive, and in fact drive in a manner so as to avoid hitting pedestrians in the roadway; even if a pedestrian's presence is unexpected; except, of course, where you truly have a case of an individual darting in front of a car as it ap-

---

[21] See *People v Vaughn,* 447 Mich 217, 238; 524 NW2d 217 (1994) (BRICKLEY, J.), p 257 (CAVANAGH, C.J., concurring in part and dissenting in part), p 267 (LEVIN, J., dissenting).

[22] The *Brisboy* substantial factor test.

proaches; where you have a pure accident. That's
not the case here.

I find that although the area is clearly dark, and
at the time of the impact there was no meaningful
street or store lighting; the defendant should have
easily been able to avoid the deceased; especially
when he was not speeding, or indeed when he was
probably under the speed limit.

Even though the trial court erroneously used a
tort law analysis, we would find that the error was
harmless beyond a reasonable doubt because the
trial court has essentially determined that the
victim's death was reasonably foreseeable, and
that the defendant's gross negligence sufficiently
dominated the victim's negligence to be fairly
treated as a criminal proximate cause of the vic-
tim's death.

Unlike *Tims,* here we can actually assess the
facts as determined by the trial court. The court
found that open intoxicants and empty beer cans
were in the defendant's car, that the defendant's
blood alcohol content was 0.10 percent, and it
emphasized that "[t]he defendant made no effort to
aid the deceased." In contrast with *Tims,* the court
also found "that the defendant did not brake his
vehicle until or after impact." Additionally, unlike
*Tims,* "there were no skid marks." We conclude
that the defendant's grossly negligent conduct suf-
ficiently dominated the victim's negligence of
walking across the road without looking. We are
most persuaded by the findings of the trial court:
that the defendant was drunk; that he failed to
brake, even though he should have seen the victim
(unlike *Tims*); and that he failed to make any
attempt to assist in moving the victim out of the
path of oncoming traffic after the accident. There-
fore, we concur with the majority in reversing the

judgment of the Court of Appeals and reinstating the conviction.

BRICKLEY, C.J., and LEVIN, J., concurred with CAVANAGH, J.