536 A.2d 1192

**Michael Derwin WILSON**

v.

**STATE of Maryland.**

**No. 823, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Feb. 9, 1988.

Certiorari Denied June 16, 1988.

Richard M. Karceski, Baltimore (Richard L. May, Glen Burnie, and Susan McMillan Davis, Towson, on brief), for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Warren B. Duckett, Jr.,

State's Atty. for Anne Arundel County, Annapolis, on brief), for appellee.

Argued before GARRITY, BLOOM and WENNER, JJ.

WENNER, Judge.

Appellant, Michael Derwin Wilson, was charged in a nine count criminal information, filed in the Circuit Court for Anne Arundel County with manslaughter by automobile, homicide by motor vehicle while intoxicated, driving while intoxicated, driving under the influence of alcohol, reckless driving, negligent driving, driving on the wrong side of the roadway, failure to yield the right of way, and improper left turn. The court granted appellant's Motion for Judgment of Acquittal as to failure to yield the right of way and improper left turn, and found him guilty of manslaughter by automobile and driving while intoxicated. The remaining counts were merged. The court sentenced appellant to the custody of the Anne Arundel County Detention Center for three years, suspended all but eighteen months in favor of three years probation and ordered him to make restitution in the amount of $3,701.21. Upon appeal, appellant contends that:

(1) The trial court committed prejudicial error when it admitted evidence of appellant's blood test for intoxication;

(2) The evidence was insufficient to convict appellant of vehicular manslaughter;

(3) The trial court committed prejudicial error when it refused to permit evidence of the victim's negligence; and

(4) Appellant was improperly charged with manslaughter by automobile pursuant to Md.Ann.Code Art. 27, § 388 (1982 Cum.Supp.).

Inasmuch as we find all of appellant's complaints to be without merit, we shall affirm.

The facts surrounding the tragic incident giving rise to this appeal may be briefly stated. On October 25, 1986 appellant was involved in a two car head-on collision which resulted in the death of Clarence Lee Brady, III. Appellant was taken to Anne Arundel General Hospital to be treated for injuries. While at the hospital, a blood test for intoxication was performed without appellant's consent and over his objection.

## I.

### (A)

■ Appellant's first contention centers on the appropriate interpretation of Md.Transp.Code Ann. § 16.205.1(c) (1987 Repl.Vol.) which reads:

(c) **Circumstances under which chemical tests required; administration; liability.**—If a person is involved in a motor vehicle accident that results in the death of another person and the person is detained by a police officer who has reasonable grounds to believe that the person has been driving or attempting to drive while intoxicated or while under the influence of alcohol, the person shall be required to submit to a chemical test, as directed by the officer, of the person's blood or breath to determine the alcohol content of the person's blood. If a police officer directs that a person's blood or breath be tested for alcohol, then the provisions of § 10–304 of the Courts and Judicial Proceedings Article shall apply. Any medical personnel who perform any test required by this section are not liable for any civil damages as the result of any act or omission related to such test, not amounting to gross negligence.

Appellant argues that 16–205.1(c) prohibits compelling the test until a physician licensed to practice medicine in this State pronounces death. We do not agree.

The principal rule of statutory construction is to ascertain the actual intent of the legislature, the primary source of which is the language of the statute itself. *State v. Los-*

*comb,* 291 Md. 424, 429, 435 A.2d 764 (1981). According to the language of § 16–205.1(c), a blood test may be compelled if a person was involved in a fatal accident and the detaining officer reasonably believes that the person was driving or attempting to drive while intoxicated or while under the influence of alcohol.[1]

A review of § 16–205.1(c)'s legislative history is instructive. As originally proposed, Senate Bill 626 [2] (now § 16–205.1(c)) provided:

> If a person is involved in a motor vehicle accident that results in *death or bodily injury to another person,* and the person is detained on suspicion of driving or attempting to drive while intoxicated or while under the influence of alcohol, the person shall submit to a chemical test of the person's blood or breath to determine the alcohol content of the person's blood.

Ch. 100, Acts of 1982.

Senate Bill 626 was subsequently amended twice before being enacted in its present form. The first amendment added "bodily injury to another person which requires immediate medical attention and removal to a medical facility." The second amendment deleted all references to any type of bodily injury. We believe this history clears up any question about the statute's meaning. As can be seen, when Senate Bill 626 was first proposed its intent was to allow compulsory blood and breath tests whenever an investigating officer arrived on the scene of an accident, discovered a death or bodily injury, and suspected the person involved to have been driving or attempting to drive while intoxicated or under the influence of alcohol. Apparently the legislature felt that this wording was too broad and

---

1. Appellant does not question the trial court's finding that the detaining officer had reasonable grounds to believe that appellant was driving while intoxicated.

2. Unless otherwise noted, information about the history of Senate Bill 626 of 1982 comes from the notes, reports, and summaries in the Senate and House Bill files.

amended the Bill to include only cases where a death had occurred. Thus, we conclude that the legislature intended that death precede a compulsory blood or breath test.

■ We now turn to the facts of the present case. At the suppression hearing, the investigating officer, Officer Hammock, testified that the paramedics and firefighters covered the victim with a raincoat, were not attempting to help him anymore, and finally covered the victim's head with a raincoat. Although Officer Hammock made no inquiry of the paramedics or firefighters, he then instructed Officer David Smith to accompany appellant to the hospital and see that a blood test was performed.[3]

As we see it, Officer Hammock's conclusion that the seriously injured victim had died when he saw the firefighters draw the raincoat over the victim's face was entirely reasonable. Surely the firefighters would not have risked hampering the breathing of a seriously injured accident victim by drawing a raincoat over his face. Thus, we hold that under the facts of this case, the officer was fully justified in having appellant's blood withdrawn over appellant's objection, and we reject appellant's argument that a blood test may not be compelled until a licensed physician pronounces death.

We believe that our construction of § 16–205.1(c) is entirely consistent with the notion that the legislative purpose in enacting Md.Cts. & Jud.Proc.Code Ann. §§ 10–302–10–309 (1984) and § 16–205.1 was to "enhance the ability of

---

**3.** The evidence shows that the blood test was taken at 3:15 a.m. According to the victim's death certificate, he was pronounced dead at 3:45 a.m. Md.Cts. & Jud.Proc.Code Ann. § 10–303 (1984) requires that the blood test be administered within two hours of apprehension. Otherwise, the test is inadmissible in prosecutions of § 21–902. The legislature has, however, specifically exempted Art. 27 §§ 388 and 388A from the coverage of this particular exclusionary rule. *Hasselhoff v. State,* 67 Md.App. 645, 508 A.2d 1030 (1986). Thus, in the present case even if the officers had waited until the victim was pronounced dead by a licensed physician, the test results would have been admissible in the prosecution of Art. 27 § 388, even if taken outside the two hour time limitation.

prosecutors to deal effectively with the drunk driver problem" and "rid our highways of the drunk driver menace." *Brice v. State,* 71 Md.App. 563, 567, 526 A.2d 647 (1987) (quoting *Willis v. State,* 302 Md. 363, 369–370, 488 A.2d 171 (1985)); *Little v. State,* 300 Md. 485, 479 A.2d 903 (1984); *State v. Werkheiser,* 299 Md. 529, 474 A.2d 898 (1984); and *State v. Moon,* 291 Md. 463, 477, 436 A.2d 420 (1981), *cert. denied,* 469 U.S. 1207, 105 S.Ct. 1170, 84 L.Ed.2d 320 (1985). As we have noted, § 16–205.1(c) sets out the circumstances under which a blood test may be compelled. Under our holding today, where the other requirements of the section are met, a blood or breath test may be compelled when *the officer reasonably believes* a death has occurred.

(B)

■ Having rejected appellant's first attack on the admissibility of the blood alcohol test, we now examine his second complaint—noncompliance with Md.Code Cts. & Jud. Proc. § 10–304(c) (1984). Specifically, appellant contends that the blood sample kit certification introduced into evidence was never linked to the actual kit used in drawing appellant's blood. We do not agree. Sections 10–304(c) and (e) provide:

(c) **Blood test.**—The blood shall be obtained by a qualified medical person using equipment approved by the toxicologist under the Postmortem Examiner's Commission acting at the request of a police officer. The chemical test of blood shall be conducted by a qualified person using equipment approved by the toxicologist under the Postmortem Examiner's Commission in a laboratory approved by that toxicologist.

(e) **Proof of approved equipment.**—For the purpose of establishing that the test was administered with equipment approved by the toxicologist under the Postmortem Examiner's Commission, a statement signed by the toxicologist certifying that the equipment used in the test has been approved by him shall be prima facie evidence of the approval, and the statement is admissible in evidence

without the necessity of the toxicologist personally appearing in court.

Rosemarie Pouliot testified that she drew the blood from appellant using the "legal alcohol police kit." She described the taking of the blood, and identified State's Exhibit No. 6 as the kit used in taking appellant's blood. Karen Irish, a forensic chemist with the Maryland State Police Crime Laboratory, testified that she received and analyzed State's Exhibit No. 6. She said that the instrument used in conducting the test, and the kit, were certified through December 31, 1986. Ms. Irish also stated that she was certified to run blood alcohol determinations, and that the Beck and Dickenson kit "is the one that was used in this." We believe that this evidence shows that the State fully complied with § 10–304(c).

We hold, therefore, that the trial court properly denied appellant's motion to suppress.

## II.

Appellant's contention that the evidence was insufficient to convict him of manslaughter by automobile was based on his argument that the results of the blood alcohol test should have been excluded. More specifically, appellant contends that without the test results there could be no finding of gross negligence or of intoxication. In view of our holding in part I of this opinion, we hold that the evidence was sufficient to convict him of manslaughter by automobile.

## III.

Appellant complains that the trial court erred in refusing to admit into evidence testimony of the victim's negligence. We do not agree.

The trial court sustained objections to the following questions asked of John Scott Dean: "What time did you meet with Lee Brady?"; "How long were you in the car?"; "Where were you coming from?"; and "Had Brady had as

much to drink as you?". We do not believe that answers to these questions would establish negligence on the part of the victim sufficient to defeat the causation found between defendant's gross negligence and the victim's death. In fact, the trial judge probably excluded these questions on the basis of relevancy or because they called for speculation. More importantly, appellant overlooks the fact that the trial court allowed Dean to answer questions concerning the location of the passengers in Brady's car, the activity in the car immediately before the collision, and the fact that beer cans were found in Brady's car.

 Moreover, in Maryland, the contributory negligence of the deceased does not operate to bar the criminal liability of the driver found to be grossly negligent. *Tipton v. State,* 39 Md.App. 578, 588, 387 A.2d 628, *cert. denied,* 283 Md. 739 (1978). Thus, we believe that even if this evidence had come in, it would not have defeated the overwhelming evidence which established that appellant's gross negligence was the direct and proximate cause of the accident.

## IV.

Finally, appellant's posits that he was improperly charged with manslaughter by automobile. More specifically, he contends that under Art. 27, § 388 he may only be charged by way of indictment or warrant. The charging document in this case was a criminal information. We find this contention to be specious.

It is clear from a reading of § 388 that it does not preclude the charging of manslaughter by automobile by criminal information. Rather, it provides that when manslaughter by automobile is charged by indictment or warrant, the formula set forth in the statute is to be used. We point out that Maryland Rule 4–201(c) provides that in the circuit court an offense which is a misdemeanor, as is manslaughter by automobile, may be tried either on an indictment or on an information.

**214**

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.