Dear Leonard C. Collins, Esquire
You have asked us to interpret a provision of the Motor Vehicle Law that requires a motorist involved in a fatal or life — threatening accident to submit to a test for alcohol or drugs when there are reasonable grounds to believe that the person has been driving under the influence of alcohol or drugs.
Specifically, you have asked if this statute authorizes law enforcement officers to use force against the motorist to obtain a blood or breath sample for the test.
In our opinion, because this provision makes testing compulsory, the implication is that law enforcement officers may use force if necessary. However, any use of force is subject to the constitutional requirement that it be objectively reasonable.
 I Compulsory Testing Law
The provision that you have asked us to interpret is codified as Annotated Code of Maryland, Transportation Article ("TR"), § 16-205.1(c) ("Compulsory Testing Law"). That subsection currently provides:
(1) If a person is involved in a motor vehicle accident that results in the death of, or a life threatening injury to, another person and the person is detained by a police officer who has reasonable grounds to believe that the person has been driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, or in violation of § 16-813 of this title, the person shall be required to submit to a test, as directed by the officer.
(2) If a police officer directs that a person be tested, then the provisions of § 10-304 of the Courts and Judicial Proceedings Article shall apply.
 (3) Any medical personnel who perform any test required by this section are not liable for any civil damages as the result of any act or omission related to such test, not amounting to gross negligence.
(Emphasis added.) In this statute, the term "test" refers to a test of breath or blood to determine alcohol concentration, a test of blood to determine drug or controlled dangerous substance content, or both. § 16-205.1(a)(iv). Section 10-304 of the Courts and Judicial Proceedings Article sets forth qualifications for the person who administers the test and standards for the equipment that is used to obtain and test a breath or blood sample; it also confers a right on the motorist to have a test administered by his or her own physician.
The Compulsory Testing Law is apparently designed to assist law enforcement officers in obtaining evidence of crimes involving the operation of motor vehicles while the operator is impaired by, or under the influence of, alcohol or controlled substances. See Annotated Code of Maryland, Article 27, § 388A (motor vehicle homicide related to alcohol or drug impairment); 388B (life — threatening injury caused by operation of motor vehicle related to alcohol or drug impairment).[1]
The Maryland courts have construed the Compulsory Testing Law to "require" or "compel" a person to undergo blood or breath tests. See Lowry v. State, 363 Md. 357, 369 n. 18, 768 A.2d 688 (2001) (law "specifies circumstances where an individual is required to take an alcohol concentration test"). In a case concerning whether a death had occurred prior to the administration of a test,[2] the Court of Special Appeals noted that death then had to precede a "compulsory blood or breath test." Wilson v. State, 74 Md. App. 204, 210, 536 A.2d 1192, cert. denied, 313 Md. 9, 542 A.2d 845 (1988) (emphasis added). Once the officer reasonably believed that a death had occurred, "a blood or breath test may be compelled." 74 Md. App. at 211. Thus, it is clearly understood that § 16-205.1(c) provides for mandatory or compulsory testing for alcohol or drugs in well — defined circumstances. However, the appellate courts have not said whether the Compulsory Testing Law impliedly authorizes law enforcement officers to use force.
Referring to an analogous federal law providing for a compulsory chemical test for motorists in some circumstances, a federal magistrate judge for the District of Maryland concluded that physical force could be used. United States v. Sauls, 981 F. Supp. 909, 913 (D.Md. 1997). However, citing Schmerber v. California, 384 U.S. 757 (1966), and South Dakota v. Neville, 459 U.S. 553 (1983), which concern constitutional limitations, that court recognized that the use of force had to be reasonable. Sauls, 981 F. Supp. at 913.
 II Legislative History
Although there is a dearth of judicial interpretation on whether the Compulsory Testing Law authorizes the use of force, the history of the enactment of alcohol and drug testing laws in Maryland supports the conclusion that the General Assembly intended to allow the use of force to administer a mandatory test. This is the implication of making an exception to an otherwise established policy against compulsion.
A. 1959)) Chemical Testing Law
In 1959, the General Assembly enacted legislation to allow the results of chemical analysis to be admitted into evidence in prosecutions for certain motor vehicle offenses involving alcohol. Chapter 769, Laws of Maryland 1959. This enactment contained a proviso: "No person shall be compelled to submit himself or any part of his body or bodily substances for the purpose of a chemical analysis." Id. This proviso was specifically recommended to the Legislative Council by a Committee on the Revision of the Motor Vehicle Laws after an earlier version of the proposed legislation, without the proviso, had not been enacted. See Legislative Council, Report to the General Assembly of 1957 at pp. 212-13, 382 and Report of the General Assembly of 1959 at 207-8.
The "no compulsion" provision in the 1959 law was originally codified as § 100(c) of Article 35. When the Courts and Judicial Proceedings Article ("CJ") was enacted in 1973, this proviso was recodified as § 10-309(a) of that Article, as part of the law governing the admission into evidence of the results of tests for alcohol or drugs during the prosecution of certain motor vehicle and other offenses. Chapter 2, Laws of Maryland 1973 (Special Session). The "no compulsion" provision still appears in CJ § 10-309
(a), although it now contains an exception referring to TR § 16-205.1(c).
B. 1969 Implied Consent Law
In 1969, the General Assembly enacted what is commonly called the "Implied Consent Law." Chapter 158, Laws of Maryland 1969; see MotorVehicle Administration v. Gaddy, 335 Md. 342, 344 n. 1 (1994). Essentially, this law provided that, as a condition for the issuance or renewal of a Maryland driver's license, a motorist must sign a statement consenting to a chemical test to determine the presence of alcohol if the motorist is detained for certain motor vehicle offenses involving alcohol. The law included a declaration that, in return for the privilege of operating a motor vehicle on highways of this State, non-residents and unlicensed motorists would be deemed to have given their consent. A refusal to take the test would result in the suspension of a motorist's driving privileges. However, the law expressly provided that a person could not be compelled to take the test. A police officer who requested a motorist to take a chemical test for alcohol was required to report a refusal.
The enactment of an Implied Consent Law was recommended by the Committee to Study Revision of the Motor Vehicle Laws, chaired by S. Ralph Warnken, in its 1968 Report to the Legislative Council. Proposed Revision of the Vehicle Laws of the State of Maryland at pp. v, 82-83 ("Warnken Report"). Unlike the legislation recommended in the Warnken Report, the 1969 enactment had, as noted, an express provision that a person could not be compelled to take the test. Accordingly, it was characterized by a committee of the Legislative Council, which reviewed the Warnken Report as an "express consent" law rather than an "implied consent" law. Legislative Council, Report to the General Assembly of 1970, Report of the Special Committee to Study the Proposed Revision of the Motor Vehicle Code at p. 909. [3] The 1969 law was initially codified as § 92A of Article 66 1/2, and later recodified as TR § 16-205.1 when the Transportation Article was enacted in 1977. Chapter 14, Laws of Maryland 1977. A 1981 revision of TR § 16-205.1
retained the provision that a person may not be compelled to take a chemical test for alcohol. Chapter 244, Laws of Maryland 1981. Subject to an exception referring to TR § 16-205.1(c), the "no compulsion" provision is still part of the Implied Consent Law. TR § 16-205.1(b).
C. 1982) Compulsory Testing Law
The Compulsory Testing Law was initially enacted in 1982. Chapter 100, Laws of Maryland 1982, codified at TR § 16-205.1(c).[4] As introduced, Senate Bill 626 provided that, in the event of a motor vehicle accident resulting in death or bodily injury, the operator "shall submit" to a chemical test for alcohol if the operator has been detained on suspicion of driving while intoxicated or under the influence of alcohol. However, in the course of the consideration of this bill, the reference to "bodily injury" was stricken. See 1982 Senate Journal at pp. 2402-3, 2686-87, 4035 and 1982 House Journal at p. 3393. Moreover, language was added to require a police officer to have "reasonable grounds" rather than a "suspicion," and the language "shall submit" to a test was revised to "shall be required to submit." 1982 Senate Journal at pp. 2402-3, 2686-87. As introduced and enacted, the bill made an exception for TR § 16-205.1(c) from the "no compulsion" provisions of CJ § 10-309(a) and TR § 16-205.1(b). In reviewing the bill, Attorney General Sachs noted that the test was mandatory and an exception to the no compulsion principle. Letter from Attorney General Stephen H. Sachs to Governor Hughes on Senate Bill 383, Senate Bill 626, and House Bill 1305 (April 18, 1982).
Although the Compulsory Testing Law has been amended in some respects,[5]
the basic provisions and codification are unchanged. In view of the mandatory nature of the testing requirement and the explicit exception to the "no compulsion" provisions of the Motor Vehicle Law, a reasonable inference is that force may be used by law enforcement officers.
 III Constitutional Considerations
While the Compulsory Testing Law was under consideration in the General Assembly, a question was raised about the constitutionality of the bill) in particular, whether compulsory testing contravened the Fourth Amendment right against unreasonable searches and seizures and the Fifth Amendment right against self-incrimination. Relying on the Supreme Court's decision in Schmerber v. California, 384 U.S. 757 (1966), this Office concluded that there was no Fourth or Fifth Amendment objection to the bill. Letter of Assistant Attorney General Robert A. Zarnoch to Senator John J. Garrity concerning Senate Bill 626 (March 31, 1982).
In Schmerber, the Supreme Court rejected various constitutional challenges to the drawing of blood over the objection of a motorist. In that case, the blood was drawn at the direction of a police officer after the arrest of the motorist and while the motorist was being treated for injuries from an automobile accident. 384 U.S. at 758-59. Although there was no evidence of the use of force, the Court observed in its due process analysis that the police could not "initiate" violence or respond to resistance with "inappropriate force." Id. at 760 n. 4 (emphasis added). Moreover, the Court noted that the Fourth Amendment requires that tests for alcohol be performed in a reasonable manner. Id. at 771-72. In a subsequent case, the Court reiterated that, while a state may force a motorist who is suspected of being intoxicated to take a blood alcohol test, the Due Process Clause limits the use of force. South Dakota v. Neville, 459 U.S. 553, 559 n. 9. Thus, if the police initiated physical violence while administering the test, refused to consider an alternative testing procedure, or responded to resistance with inappropriate force, there could be a due process objection. Id.
In a recent decision, the Supreme Court of New Jersey applied an objective balancing test to determine if the use of force in extracting blood from a motorist who had been arrested for driving while intoxicated satisfied the reasonableness requirement of the Fourth Amendment. NewJersey v. Ravotto, 777 A.2d 301, 303, 306, 313-14 (2001). State courts in a number of other jurisdictions have similarly referred to the principles set forth in Schmerber and Graham v. Connor, 490 U.S. 386 (1989), to analyze claims that officers used excessive force to obtain blood or breath samples from motorists for testing. See, e.g., State v. Clary,2 P.3d 1255, 1260-61 (Ariz.App. 2000); People v. Hanna, 567 N.W.2d 12,14-15 (Mich.App. 1997), app. denied, 587 N.W.2d 637 (1998); McCann v.Delaware, 588 A.2d 1100, 1102 (1991); North Dakota v. Lanier,452 N.W.2d 144, 146-47 (1990).
 IV Conclusion
In our opinion, the Compulsory Testing Law authorizes law enforcement officers to use force on motorists subject to the law to obtain chemical samples to test for alcohol or drugs. However, the exercise of this authority is subject to constitutional limitations) in particular, officers may only use reasonable force.
J. Joseph Curran, Jr.
Attorney General
Richard E. Israel Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] As of October 1, 2002, these sections will be recodified as §§ 2-501 through 2-508 and § 3-211 of the new Criminal Law Article. Chapter 26, Laws of Maryland 2002.
[2] At that time, the Compulsory Testing Law applied only when a motor vehicle accident resulted in a death. The statute was amended in 1994 to extend it to accidents involving "life threatening injuries." Chapter 164, Laws of Maryland 1994.
[3] The Court of Appeals also recognized that the 1969 law required a motorist's express consent for a test to determine the presence of alcohol. See State v. Moon, 291 Md. 463, 473, 436 A.2d 420 (1981); see also 291 Md. at 492-493 (Davidson, J., dissenting). However, as noted, the law is still called the Implied Consent Law. See Gaddy,335 Md. at 344 n. 1.
[4] Two years after Maryland enacted the Compulsory Testing Law, the National Committee on Uniform Traffic Laws and Ordinances incorporated a compulsory testing provision as part of the Uniform Vehicle Code and Model Traffic Ordinance. National Committee on Uniform Traffic Laws and Ordinances, Uniform Traffic Laws and Ordinances, § 6-209 (Revised 1987). The Uniform Vehicle Code, first drafted in the 1920's, Sauls,981 F. Supp. at 924 n. 9, has served as a model for Maryland's Vehicle Laws. See Warnken Report at iii, Legislative Council, Report to the General Assembly of 1970 at pp. 230, 907 (Report of the Special Committee to Study the Proposed Revision of the Motor Vehicle Code); and Chapter 534, Laws of Maryland 1970.
[5] For example, the statute was extended to include driving under the influence of drugs and controlled dangerous substances, Chapter 413, Laws of Maryland 1990, and circumstances involving life-threatening injury as well as death, Chapter 164, Laws of Maryland 1994.
 *Page 161