**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0441n.06

No. 16-2215

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 24, 2018
DEBORAH S. HUNT, Clerk

|                              |     |                                    |
| ---------------------------- | --- | ---------------------------------- |
| MARY DANIELAK,               | )   |                                    |
|                              | )   |                                    |
| **Petitioner-Appellant,**    | )   |                                    |
|                              | )   | **ON APPEAL** FROM THE             |
| v.                           | )   | UNITED STATES DISTRICT             |
|                              | )   | COURT FOR THE EASTERN              |
| SHAWN BREWER,                | )   | DISTRICT OF MICHIGAN               |
|                              | )   |                                    |
| **Respondent-Appellee.**     | )   | **OPINION**                        |
|                              | )   |                                    |

**BEFORE: NORRIS, ROGERS, and BUSH, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** Mary Danielak appeals the district court's judgment denying her petition for a writ of habeas corpus under 28 U.S.C. § 2254.

Petitioner helped a friend purchase heroin. The friend died after using it. Petitioner then participated in an attempted cover-up of the death. A jury subsequently convicted her of aiding and abetting the following crimes: (1) delivery of a controlled substance, causing death, Mich. Comp. Laws § 750.317a; (2) common law obstruction of justice, Mich. Comp. Laws § 750.505; (3) tampering with evidence, Mich. Comp. Laws § 750.483a(5)(a); and (4) removing a body without the permission of a medical examiner, Mich. Comp. Laws § 52.204. Petitioner unsuccessfully appealed the verdict. *People v. Danielak*, No. 305491, 2012 WL 6913789 (Mich. Ct. App. Nov. 20, 2012); *People v. Danielak*, 830 N.W.2d 139 (Mich. 2013) (denying application for leave to appeal).

Thereafter she filed a pro se § 2254 petition, which raised the following claims: (1) the evidence was insufficient to support her convictions for aiding and abetting the obstruction of justice, tampering with evidence, and removing a dead body; (2) the state legislature violated her right to due process by creating the offense of delivery of a controlled substance, causing death, as a strict-liability crime carrying the same penalty as second-degree murder, which requires proof of malice; (3) the evidence was insufficient to support her conviction for aiding and abetting the delivery of a controlled substance, causing death; and (4) the trial court erred by denying her request to elicit testimony about statements made by the victim's husband. The district court denied the petition on the merits, *Danielak v. Warren*, No. 14-11131, 2016 WL 3971209 (E.D. Mich. July 25, 2016), but granted a certificate of appealability ("COA") on the first claim. *Id.* at *11. Petitioner then sought an expanded COA in this court. We granted a COA with respect to the third claim.

**I.**

Standard of Review

Pursuant to § 2254(d), habeas corpus relief may be granted on claims that were adjudicated in state court only if the state-court adjudication (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

When reviewing a claim for insufficient evidence, a federal habeas court must apply a "twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *see also Brinkley v. Houk*, 831 F.3d 356, 362 (6th Cir. 2016). First, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Second, a federal habeas court may overturn a state court's rejection of

an insufficient-evidence claim only if the state court's decision was objectively unreasonable under

§ 2254(d). *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012). Particularly important in claims of

insufficient evidence, we must accord a presumption of correctness to factual determinations of a

state court. 28 U.S.C. § 2254(e)(1). The burden falls to petitioner to rebut this presumption of

correctness by clear and convincing evidence. *Id.*

We review the district court's denial of a petition for a writ of habeas corpus de novo.

*Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 840 (6th Cir. 2017).

Michigan's Aiding and Abetting Statute

Because all of petitioner's convictions are for aiding and abetting, a review of Michigan's

version of the statute is necessary:

> Sec. 39. Every person concerned in the commission of an offense, whether he
> directly commits the act constituting the offense or procures, counsels, aids, or abets
> in its commission may hereafter be prosecuted, indicted, tried and on conviction
> shall be punished as if he had directly committed such offense.

Mich. Comp. Laws § 767.39. The Michigan Supreme Court has summarized the statute's operation

and elements in these terms:

> Unlike conspiracy and felony murder, which also allow the state to punish
> a person for the acts of another, aiding and abetting is not a separate substantive
> offense. Rather, "being an aider and abettor is simply a theory of prosecution" that
> permits the imposition of vicarious liability for accomplices.
>
> This Court recently described the three elements necessary for a conviction
> under an aiding and abetting theory:
>
> > (1) the crime charged was committed by the defendant or some
> > other person; (2) the defendant performed acts or gave encouragement that
> > assisted the commission of the crime; and (3) the defendant intended the

> commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement.

*People v. Robinson*, 715 N.W.2d 44, 47-48 (Mich. 2006) (citations omitted).

<u>1. Was Petitioner's Right to Due Process Violated Because Constitutionally Insufficient Evidence was Introduced in Support of her Conviction for Aiding and Abetting the Delivery of a Controlled Substance Causing Death?</u>

*A. The Statute at Issue*

The Michigan statute at issue reads as follows:

> Sec. 317a. A person who delivers a schedule 1 or 2 controlled substance, other than marihuana, to another person in violation of section 7401 of the public health code, 1978 PA 368, MCL 333.7401, that is consumed by that person or any other person and that causes the death of that person or other person is guilty of a felony punishable by imprisonment for life or any term of years.

Mich. Comp. Laws § 750.317a.

*B. Factual Findings Affecting the Claim*

In its opinion, the Michigan Court of Appeals summarized the core facts giving rise to the

prosecution in these terms:

> Danielak['s] conviction[] stem[s] from the death of Cherie Irving ("the victim"). In the early morning hours of October 3, 2010, the victim drove to Danielak's apartment in Jackson, Michigan. Danielak and the victim then went to the Abbey Villa Apartments to meet a drug dealer named "Chill." Sergeant Brian Russell testified that Danielak told him that she had purchased cocaine and heroin from Chill in the past, and that she was going to introduce the victim to Chill so the victim could purchase heroin in the future if needed. Danielak purchased three bindles of heroin from Chill and the victim purchased four bindles. Danielak and the victim went back to Danielak's apartment and used a syringe to inject themselves with heroin.
>
> Danielak woke up late in the afternoon of October 3, 2010, and found the victim dead on the bathroom floor. On discovering the victim's body, Danielak called her boyfriend, Randy Reeser. According to Danielak, Reeser told her to go to his mother's house (Rand's house), get ready for work, and that he would take care of it. Danielak did as Reeser instructed and went to work at approximately 9:00 p.m.
>
> Later that evening, Reeser went to Rand's house and informed her that there was a dead body in Danielak's apartment. Reeser and Rand drove to Danielak's apartment and placed the victim's body in the back seat of Rand's car. Later, Reeser and Rand

moved the body to the trunk and drove to the Sandstone Creek Bridge. Rand parked on the side of the road and Reeser removed the victim's body from the trunk. Reeser placed the victim's body on the side of the road, but it later slipped down an embankment and fell into the creek.

*Danielak*, 2012 WL 6913789, at *1 (footnotes omitted).

The court also made the following findings with respect to the cause of Ms. Irving's death:

Here, it is undisputed that the crime charged was committed by a subject identified as Chill, Danielak's drug dealer. Additionally, . . . Danielak performed acts that assisted in the commission of the crime. The testimony at trial established that Danielak took the victim to the Abbey Villa Apartments so that they could purchase heroin. Danielak admitted to a police officer that she introduced the victim to Chill so that the victim could purchase heroin from him at a later date if necessary. By introducing the victim to Chill, Danielak assisted both the victim and Chill in the transaction. Had it not been for Danielak's introduction, the victim would have been unable to purchase heroin from Chill. Moreover, Danielak intended or had knowledge that Chill would deliver heroin to the victim. Therefore, sufficient evidence was presented to convict Danielak of delivery of a controlled substance causing death under an aiding and abetting theory.

Danielak also argues that the prosecution failed to prove that the victim's death was caused by a heroin overdose. At trial, the medical examiner testified that the victim had lethal amounts of both cocaine and heroin in her system; therefore, he could not say which drug killed her. Because the medical examiner could not say with absolute certainty which drug killed the victim, Danielak argues that the prosecution failed to establish causation. This argument is unpersuasive.

Viewed in the light most favorable to the prosecution, a rational jury could find beyond a reasonable doubt that the victim's cause of death was a heroin overdose. The medical examiner stated that the victim suffered a pulmonary edema. Though he was unable to say which drug killed the victim, the autopsy results indicate that her death was more consistent with a heroin overdose. The medical examiner testified that heroin is an opiate and its primary function is to depress the central nervous system. The examiner further stated that heroin can depress the central nervous system's drive to breathe, which is consistent with pulmonary edema. Cocaine, on the other hand, is a stimulant and disrupts the signals from the brain to the heart. The medical examiner stated that cocaine can cause the heart to stop beating, but he saw no evidence that the victim died from a heart attack. Based on this evidence, a rational jury could find beyond a reasonable doubt that the victim died from a heroin overdose.

*Id.* at *7.

At trial, Dr. Patrick Cho, the medical examiner, offered the following testimony:

Q: And based on this amount, in your expert . . . opinion then the amount of cocaine in Sherry Irving's body would have been a . . . lethal amount?

A: Yes.

Q: So in your opinion if Sherry Irving had not ingested heroin . . . at the time, she would have died from the cocaine in her body?

A: Yes.

. . . .

Q: And the amount of heroin that also you found in there . . . if she had not taken any cocaine would the natural necessary result of ingesting the heroin . . . have caused her death?

A: Yes.

Q: So basically Doctor are you telling the jury that – as an expert that either one of these amounts of controlled substances were enough that would have killed her that night?

A: Yes.

(Page ID 653-54.) He also affirmed the following statement during cross-examination: "And there's nothing that you can say to determinately [sic] say the heroin was the cause of death." (Page ID 676.) However, as the court of appeals noted, the doctor also explained that heroin is an opiate and "its primary function is to depress the central nervous system. It's a depressant." (Page ID 663-64.) In this case, the victim died of pulmonary edema, which is consistent with a heroin overdose, whereas cocaine acts as a stimulant which often results in a cardiac episode, which did not occur here. (Page ID 664-66.)

*C. Legal Principles*

On appeal to this court, petitioner does not contend that the prosecution failed to satisfy the first element of Mich. Comp. Laws § 750.317a: delivery of a schedule 1 or 2 controlled substance to another person, that is consumed by that person. Rather, she focuses on the second element: that

the controlled substance caused that person's death. The Michigan Supreme Court has discussed

criminal causation in these terms:

> In criminal jurisprudence, the causation element of an offense is generally comprised of two components: factual cause and proximate cause. The concept of factual causation is relatively straightforward. In determining whether a defendant's conduct is a factual cause of the result, one must ask, "but for" the defendant's conduct, would the result have occurred? If the result would not have occurred absent the defendant's conduct, then factual causation exists.

> The existence of factual causation alone, however, will not support the imposition of criminal liability. Proximate causation must also be established. . . . [P]roximate causation is a legal colloquialism. It is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural. Thus, a proximate cause is simply a factual cause of which the law will take cognizance.

*People v. Schaefer*, 703 N.W.2d 774, 785 (Mich. 2005) (footnotes and citations omitted). Under

this standard, the state must prove beyond a reasonable doubt that "but for" her ingestion of heroin,

Ms. Irving would not have died. In petitioner's view, the evidence introduced at trial did not

sufficiently support this conclusion—at least not beyond a reasonable doubt.

Prior to *Schaefer*, the Michigan Supreme Court considered whether culpable conduct can

be found when it represents "a" proximate cause of death, or whether it must be "the" proximate

cause. *People v. Tims*, 534 N.W. 2d 675, 680-81 (Mich. 1995). The Court concluded that the proper

test is *a* cause, *id.* at 680, based upon the following reasoning:

> The phrase "the proximate cause" is a legal colloquialism reflecting the reality that, particularly in homicide cases, there is almost invariably only one *culpable* act that could be considered a direct cause—a knife being stabbed, a gun being fired, or a car driven recklessly. The phrase does not imply that a defendant is responsible for harm only when his act is the sole antecedent.

> The suggestion that the presence of an additional "cause" of death could be a complete defense to negligent homicide is inconsistent with accepted notions of responsibility. Acceptance of such a proposition would require, for example, that if an infant died because it was locked in a hot car on a sunny day, and the child was left there by two parents rather than one, neither could be found criminally responsible. Similarly, if a guest died in a hotel fire that began because another guest was setting off firecrackers in a room, the latter guest's extremely culpable

conduct would be excused or mitigated if it turned out that, unknown to him at the time, another person doing the same thing also set a fire accidentally at the other end of the hotel. Such examples illustrate the basis for the sound proposition embodied in the doctrine of "a" substantial cause, that joint equal causes do not excuse culpable behavior.

*Id.* at 680-81.

It is axiomatic that a criminal conviction requires proof beyond a reasonable doubt of each element of the crime. *In re Winship*, 397 U.S. 358, 361 (1970). According to petitioner, a preponderance of the evidence standard inappropriately replaced that of reasonable doubt in her trial. Because *Jackson*, 443 U.S. at 319, requires us to view the evidence in a light most favorable to the prosecution, she concedes the following facts: Ms. Irving's death was caused by drug abuse; she likely died of pulmonary edema; she had potentially lethal doses of both heroin and cocaine in her system; pulmonary edema is consistent with a heroin overdose; cocaine overdoses can cause heart failure; and, the medical examiner found no evidence of a heart attack. Despite these concessions, she argues that no rational juror could find that heroin was the "but for" cause of Ms. Irving's death.

She analogizes her situation to that faced by the death-row petitioner in *Joseph v. Coyle*, 469 F.3d 441 (6th Cir. 2006). Like petitioner, Joseph raised a due process challenge to the sufficiency of the evidence. *Id.* at 454. In his case, the capital specification with which he was charged required him to be the "principal offender in the commission of the aggravated murder." *Id.* (quoting Ohio Rev. Code § 2929.04(A)(7)). "The Ohio Supreme Court has consistently interpreted this element to require the defendant to be 'the actual killer.'" *Joseph*, 469 F.3d at 454 (citing Ohio cases). Because petitioner Joseph was not the only person present at the time of the murder and the prosecution could not establish that Joseph had inflicted either of the potentially

fatal stab wounds, this court determined that the evidence was insufficient to support the capital specification:

> *[N]one* of this evidence shows that Joseph personally inflicted either stab wound [to the victim]. This fact does not present an obstacle to conviction in a case where the defendant was the only person either present when the victim was murdered or otherwise involved in the crime, the logic being that he is the only person who could have actually committed the murder. But when the defendant and a coconspirator are present at the time and place of the murder, there must be evidence showing that the defendant struck the fatal blow(s).

*Id.* at 455 (citations omitted). Petitioner argues that, as in *Joseph*, there were two potential killers at the scene: cocaine and heroin and that a jury simply cannot find factual causation beyond a reasonable doubt when doubt exists as to which of two possible causes was the true cause of death.

In the instant case, one of four things must have happened. The heroin consumed by Irving may have been the sole cause of her death. If there was sufficient evidence for a rational jury to find that this was the case, Danielak's appeal must lose. It is also possible that the heroin Irving consumed, in combination with the cocaine she consumed, caused her death, rendering both the heroin and the cocaine but-for causes of her death. If there was sufficient evidence for a rational jury to find that this was the case, Danielak's appeal must lose under the analysis provided in *Tims*. The third possibility is that heroin and cocaine each independently caused Irving's death, as would be the case if the cocaine caused a fatal heart attack and the heroin caused a fatal pulmonary edema. In a situation such as this, Federal law is unsettled as to whether the provider of only one of the drugs can be held criminally liable for the death. *Burrage v. United States*, 134 S.Ct. 881, 890 (2014), and Michigan courts do not appear to have addressed this issue. Finally, it may be that the cocaine consumed by Irving was the sole cause of her death, in which case Danielak argues that the state court unreasonably found that a rational jury could conclude this did not happen because

the evidence admitted at trial was consistent with Irving's death being caused by the lethal dose of cocaine she had ingested—if Danielak is correct, she must win her appeal.

Because we presume that the Michigan Court of Appeals was aware of *Tims*' teaching that, when there are two independent culpable causes, it is sufficient to prove that the actions of petitioner—aiding and abetting in the delivery of heroin that caused the death of Ms. Irving—were a joint mutual cause. *See Tims*, 534 N.W.2d at 681-82. That Irving died of a pulmonary edema, which is more consistent with a death caused by heroin, and not of a heart attack, which is more consistent with a death caused by cocaine, is enough for us to answer that question in the affirmative. Moreover, there would be sufficient but-for causation if a rational jury could have found either that it was the heroin that killed Irving or that it was a combination of the heroin and the cocaine. In our view, the Court of Appeals' holding looks less like a misapplication of the beyond-a-reasonable-doubt standard than a reasonable application of Michigan's law of causation, to wit, there was sufficient evidence for a rational trier of fact to have found a substantial cause because "joint mutual causes do not excuse culpable behavior." In light of the double deference barrier discussed in *Matthews*, 567 U.S. at 43, petitioner has failed to meet either of the factors required to merit habeas relief under 28 U.S.C. § 2254(d).

*2. Was Constitutionally Sufficient Evidence Introduced in Support of Petitioner's Conviction For Aiding and Abetting the Obstruction of Justice, Tampering with Evidence, and Removal of a Body?*

*A. Obstruction of Justice*

In Michigan, obstruction of justice is a common law felony offense punishable by up to five years of incarceration and/or a fine of up to $10,000. Mich. Comp. Laws § 750.505.

The Michigan Court of Appeals relied upon the following findings in sustaining petitioner's conviction for aiding and abetting in the obstruction of justice:

Although evidence that Danielak aided and abetted the removal and concealment of the victim's body was circumstantial, it was sufficient to convict her. On discovering that the victim was dead, Danielak did not call the authorities to report what happened. Rather, she called Reeser. Her decision to contact Reeser, as opposed to the authorities, supports that she intended to cover up the victim's death and was seeking help in doing so. Additionally, after speaking with Reeser, she did exactly as instructed—went to Rand's apartment and got ready for work. Thus, a rational jury could find beyond a reasonable doubt that Danielak gave encouragement to Reeser that assisted in the commission of the crime.

There was also sufficient evidence that Danielak intended the commission of the crime or had knowledge that Reeser intended the commission of the crime. A defendant's "[i]ntent is a question of fact to be inferred from the circumstances by the trier of fact." "An aider and abetter's knowledge of the principal's intent can be inferred from the facts and circumstances surrounding an event." "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient."

Again, Danielak did not contact authorities to report the victim's death; rather, she contacted Reeser. A rational jury could thus conclude that she contacted Reeser because she intended to conceal the victim's body. Additionally, Danielak told Sergeant Russell that Reeser told her that he would "take care of it." Though Danielak argues that the phrase "take care of it" could mean any number of things, a reasonable jury could conclude that, under the circumstances, "take care of it" meant that Reeser would get rid of the victim's body. The evidence also shows that Danielak sent text messages to the victim after she died in an effort to conceal her knowledge of the victim's death. The victim died sometime in the early morning hours of October 3, 2010. A co-worker stated that Danielak came to work at approximately 9:00 p.m. that night and told her that she had sent text messages to the victim advising the victim that she had her car keys. These messages were a clear attempt to hide Danielak's knowledge of the victim's death and to help explain why the victim's vehicle was at Danielak's apartment. Moreover, it appears that the text messages were sent before Reeser and Rand removed the victim's body. That Danielak sent text messages to the victim before the victim's body was removed indicates that Danielak knew that Reeser intended to conceal the victim's body. Therefore, a rational jury could find beyond a reasonable doubt that Danielak either intended the commission of the crime or knew that Reeser intended the commission of the crime.

*Danielak*, 2012 WL 6913789, at *2 (footnotes and citations omitted).

Petitioner refers us to *Fuller v. Anderson*, 662 F.2d 420 (6th Cir. 1981), for the proposition that "mere presence" or "passive acquiescence" is insufficient to make one an aider or abettor. *Id.* at 424 (citations omitted). In *Fuller*, a habeas petition brought prior to the enactment of the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), petitioner was present, along with several other boys, when Zerious Meadows threw a Molotov cocktail at a nearby home, which resulted in the deaths of two children due to fire. Petitioner was convicted for aiding and abetting felony murder. The district court granted his subsequent habeas petition, which contended that the evidence presented was constitutionally insufficient to support his conviction. This court agreed, holding that "mere presence" is insufficient to support a verdict of guilt beyond a reasonable doubt. *Id.*

In a similar vein, we affirmed the grant of a habeas petition to an individual convicted of aiding and abetting an armed robbery and carjacking. *Brown v. Palmer*, 441 F.3d 347, 353 (6th Cir. 2006). In *Brown*, the following facts were cited by the state in support of the jury's verdict of conviction for aiding and abetting but were found wanting by this court:

> (1) Brown was present before and during the carjacking, (2) he and the perpetrator were in the car together before the perpetrator committed the offenses, (3) he stared at the victims while the perpetrator fired the shots, (4) he never got gas even though he was parked near a gas pump, (5) he attempted to flee as soon as the perpetrator drove off in the car, and (6) he failed to contact the police to retrieve his car. These facts were also relied on by the Michigan Court of Appeals, which held that intent could be inferred from the above circumstantial evidence.

> Taking this evidence in the light most favorable to the state, as we must do pursuant to AEDPA, 28 U.S.C. § 2254(e)(1), the evidence clearly demonstrates that Brown was present at the scene and had some acquaintance with the perpetrator. Beyond that, however, the evidence pointing to Brown's guilt becomes quite speculative.

*Id.* at 351. While acknowledging that the cases relied upon by the district court—which included *Fuller*—were decided pre-AEDPA, we nonetheless determined that "their holdings that distinguish reasonable speculation from sufficient evidence are still persuasive in establishing that the state court's application of federal constitutional law as set forth in *Jackson* was objectively unreasonable." *Id.* at 352 (citation omitted).

Not surprisingly, in our case petitioner contends that the evidence against her gave rise, at best, to speculation and was far thinner than that produced (and found wanting) in the cases just discussed. All that the jury learned was that her boyfriend, Reeser, would "take care of it" when she contacted him. In her view, this hardly qualifies as encouraging the obstruction of justice, which constitutes the second element of the aiding and abetting statute. *Robinson*, 715 N.W.2d at 47-48.

The Michigan Court of Appeals also cited the text messages that petitioner sent to Ms. Irving despite the fact that she knew she was dead. Petitioner splits a very fine hair on this point, arguing that the evidence didn't establish whether she sent those messages before or after her boyfriend and his mother moved Ms. Irving's body. If they were sent after the body had been moved (and justice obstructed), then she would only qualify as an accessory after the fact. An accessory after the fact is not an aider and abettor under Mich. Comp. Laws § 767.39. *People v. Lucas*, 262 N.W.2d 662, 663 (Mich. 1978).

While the sufficiency of the evidence with respect to her first claim presented a very close question, this one does not. As mentioned earlier, AEDPA instructs us to accord the facts as recited by the Michigan Court of Appeals a presumption of correctness, 28 U.S.C. § 2254(e), and those facts lead us to the conclusion that a rational juror could have found beyond a reasonable doubt that petitioner aided and abetted in the obstruction of justice. We would reach the same conclusion even if we were inclined to discount the evidentiary weight of petitioner's post-mortem text messages.

*B. Tampering with Evidence*

In Michigan, a person shall not "[k]nowingly and intentionally, remove, alter, conceal, destroy, or otherwise tamper with evidence to be offered in a present or future official proceeding." Mich. Comp. Laws § 750.483a(5)(a).

The Michigan Court of Appeals rejected petitioner's challenge to her conviction for aiding and abetting the tampering with evidence as follows:

> The basis for Danielak's conviction for tampering with evidence is the same as that for her conviction of obstruction of justice—the removal and concealment of the victim's body. For the reasons discussed above, there was sufficient evidence to convict Danielak under an aiding and abetting theory.

*Danielak*, 2012 WL 6913789, at \*5.

Petitioner advances essentially the same argument that she did with respect to obstruction of justice. For the same reasons, her argument is unavailing.

*C. Removal of a Body without Permission*

Michigan law prohibits the removal of a body from the place where death occurred without first notifying the county medical examiner or his deputy. Mich. Comp. Laws § 52.204.

The Michigan Court of Appeals rejected this claim for essentially the same reasons that it denied relief on the obstruction of justice and tampering with evidence challenges. We affirm for the same reasoning.

## III.

The judgment of the district court is **affirmed**.